UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO: 09-00650 |
| VERSUS | JUDGE DONALD E. WALTER |
| HAROLD TURNER | MAGISTRATE JUDGE AZRACK |

### MEMORANDUM RULING

Before the Court is a Motion filed by Defendant, Harold Turner, to Dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), and by asserting that the First Amendment protects him from criminal prosecution.

The indictment in this case charges that on or about June 2, 2009, and June 3, 2009, the Defendant threatened to assault and murder three United States Judges with the intent to impede, intimidate, and interfere with such Judges while engaged in the performance of official duties and with the intent to retaliate against such Judges on account of the performance of official duties, all in violation of Title 18, United States Code, Section 115(a)(1)(B). Defendant has entered a plea of not guilty to the charge.

The Defendant premises his Motion on Federal Rule of Criminal Procedure 12(b)(3)(B) which allows a Defendant to file a motion alleging a defect in the indictment or bill of information such that the indictment or bill fails to invoke the Court's jurisdiction or to state an offense. An indictment is sufficient if it accomplishes three things: (1) it must state each element of the crime charged; (2) it must provide the defendant with adequate notice of the nature of the charges so that the accused may prepare a defense; and (3) it must allow the defendant to raise the judgment as a bar to future prosecutions of the same offense. *United States v. Castaldi*, 547 F.3d 699, 703 (7th Cir.

2008). An indictment is sufficient if it merely reiterates the statutory language as long as the words themselves set forth the necessary elements without ambiguity. *See Hambling v. United States*, 418 U.S. 87, 117 (1974).

The Defendant's Motion to Dismiss does not allege that the indictment fails to state the elements of the crime charged, provide notice of the offenses charged or fails to allow the Defendant to raise a judgment as a bar. Accordingly, this Court finds that the indictment as presented is sufficient.

Clearly it remains to the Jury to determine whether or not Defendant "threatened with intent" as charged in the indictment. *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008); *see also United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990). The question that this Court must address is whether, as a matter of law, the alleged "threats" are protected from prosecution by the First Amendment of our Constitution. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." This protection is extended to speech that "the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (citing *Abrams v. United States*, 250 U.S. 616 (1919)). Protections afforded under the First Amendment are not, however, absolute. The Government may regulate speech or expression consistent with the Constitution. *Black*, 250 U.S. at 348.

The freedom to exercise one's right of free speech is often curtailed temporally, geographically or even demographically. Like Justice Holmes' famous example, even "the most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic." *Schenk v. United States*, 249 U.S. 47, 52 (1919).

There are limited circumstances where the social interest in order and morality will outweigh the benefit derived from the content of speech. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-383 (1992). The First Amendment does not afford protection to speech that constitutes a "true threat." *Watts v. United States*, 394 U.S. 705, 708 (1969). Nor does it protect speech that advocates the use of force where the speech is directed at "inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenberg v. Ohio*, 395 U.S. 444, 447 (1969).

What constitutes a "true threat" is determined by considering whether the statement is a "serious expression of an intent to commit an act of unlawful violence to a particular individual or groups of individuals." *Parr*, 545 F.3d at 497. The speaker does not have to actually intend to carry out the threat. *Black*, 538 U.S. 343, 360. The statute for the crime charged in this case requires that a defendant threaten an individual with the intent to impede or retaliate for their official acts. *See* 18 U.S.C. §115(a)(1)(B). In addition to protecting individuals from the possibility that the threatened violence will occur, the prohibition also protects individuals from the fear of violence and the disruptions that such fear engenders. *Black*, 538 U.S. at 360. The threat need not be communicated to the alleged victim. *Parr,* 545 F.3d at 497.

Defendant argues that even if his statements do constitute a "true threat" they are political speech, and as such are protected from prosecution by the First Amendment. Defendant asserts that his statements, although distasteful to many, were merely opinions which were in no way directed to incite lawless action. Rather, Defendant characterizes his statements as "political hyperbole" meant to shock his audience.

The First Amendment does not protect speech which "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *See Communist Party of*

3

*Indiana v. Whitcomb*, 414 U.S. 441, 448 (1974); *Brandenburg*, 395 U.S. at 447. The Supreme Court has clearly drawn a distinction between the mere teaching of a resort to violence from instances where an individual is "preparing a group for violent action and steeling it to such action." *Noto v. United States*, 367 U.S. 290, 297-298 (1961).

The Court finds that Defendant's actions are sufficient to incite or urge lawlessness. Moreover, posting the victims' pictures, the exact location where they are employed with room numbers, and a map to the federal building complete with indications where the "Anti-truck bomb barriers" are located, provided exact information to <u>facilitate</u> the threat.

Defendant argues that his statements were not meant to incite imminent lawlessness. As support, he notes that his comments were posted on his computer in New Jersey while the Judges were in Chicago, and that he did not actually stand outside of the Courthouse urging a group of supporters to rush the Courthouse to attack the Judges. The Court finds this argument unpersuasive. In the world in which we live, speech has no geographical boundaries. The fact that Defendant issued his statements on his blog rather than in person only served to ensure that an indefinite audience had access to his remarks, and enlarged the group of individuals subject to incitement.

Defendant's statements specifically called for the killing of the three Judges to prevent other Judges from "act[ing] the same way." It is clear the Defendant's words intend that action should be taken sooner rather than later. In an era when physicians have been murdered in their places of worship; families of Judges have been slain; a Judge of the Eleventh Circuit Court of Appeals and State Court Judges have been blown up or shot; a Federal Courthouse ripped apart by homemade explosives, all in the name of political dissent or religious fanaticism, it cannot be said that Defendant's statements are unlikely to incite imminent lawless action.

4

This Court cannot ignore the audience to whom the alleged threats were communicated. While the actions and statements of other individuals cannot be charged against the Defendant, they are certainly relevant to the issue of the "imminence of lawless action." A casual search of the Internet reveals a plethora of blogs and web pages overflowing with hate filled speech, often praising the Defendant for his alleged statements and calling for further action by like-minded individuals.

In this case, Defendant named the targets and gave specifics of their location. The First Amendment, especially in this day and time, and in this venue, does not protect the "speech" of the Defendant. The daily news presents a "clear and present danger" of society's ever increasing resort to the sword as opposed to the pen or the pulpit. *See* Joe Stumpe and Monica Davey, *Abortion Doctor Shot to Death in Kansas Church*, N.Y. TIMES, May 31, 2009. In order to resolve perceived wrongs whether they be political slights or attacks upon their religion, individuals are succumbing to the siren song of the sword.

Accordingly, the Court finds, **as a matter of law**, that the First Amendment does not protect Defendant from prosecution under the specific facts presented in this case.

No Judge, least of all this one, would deny Defendant the right to criticize these or any other Judge, even in the most obscene manner. Although, this Judge notes with sadness the passing of good manners from public speech. Somewhere in this day of absolutes, a line, for the protection of society, for the good of the order, must be drawn. Public discourse must mean something more than threats and rants. To paraphrase Thomas L. Friedman in his New York Times Op-Ed. of September 30, 2009, there is a vast difference between criticizing the Judiciary or its opinions and "encouraging the unthinkable and the unforgivable."

In denying Defendant's motion, there is no suppression of free speech. Individuals are at liberty to criticize the judgment of any official of the Government, including the Judges of the Seventh Circuit Court of Appeals. They may attack their opinion as willfully stupid, ignorant, dangerous, even insane or any other pejorative available to them in any thesaurus. They may call for their impeachment, or even for a constitutional amendment doing away with their office. There are any number of ways for citizens of this great country to express their discontent with the actions of their public servants. Calling for their assassination is not one of them.

Accordingly, and for the foregoing reasons, Defendant's Motion to Dismiss is hereby **DENIED**.

**THUS DONE AND SIGNED**, this 5th day of October, 2009.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE