UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 650 |
| vs. | ) | Judge Donald E. Walter |
| | ) | |
| HAROLD TURNER | ) | |

**Government's Motion to Admit Evidence Inextricably Intertwined With
The Charged Offense and Admissible Under Rule 404(b)**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J.
FITZGERALD, United States Attorney for the Northern District of Illinois, hereby
moves *in limine* for a ruling on the admissibility of certain evidence the government
may use at trial. In most instances, the evidence is inextricably intertwined with the
crime charged and, therefore, admissible without reference to any limitations on "other
act" evidence in Federal Rule of Evidence 404(b). Alternatively, however, the evidence
is admissible under Federal Rule of Evidence 404(b), as it bears on defendant's motive,
intent, plan, knowledge, and absence of mistake. Admission of the proffered evidence
is consistent with Second Circuit precedent, will not lengthen the trial to any
significant degree, and will assist the jury in properly determining the guilt or
innocence of the defendant.

## I.    Introduction

The indictment in this case charges that on or about June 2, 2009, and June 3,
2009, defendant threatened to assault and murder three United States judges with
intent to impede, intimidate, and interfere with such judges while engaged in the
performance of official duties and with intent to retaliate against such judges on

account of the performance of official duties, in violation of Title 18, United States Code, Section 115(a)(1)(B). 09 CR 542, Doc. #5.[1]

To prove a violation of 18 U.S.C. § 115(a)(1)(B), the government must establish that defendant threatened Judges Easterbrook, Posner, and Bauer, which is determined by an objective standard: whether a reasonable person viewing the communication and its context would interpret it as a true threat of injury. *United States v. Francis*, 164 F.3d 120, 123 (2d Cir. 1999); *see also United States v. Parr*, 545 F.3d 491 (7th Cir. 2008); *United States v. Nishnianidze*, 342 F.3d 6, 15 (1st Cir. 2003). The government seeks a ruling permitting it to admit some of the surrounding blog postings on defendant's website (Exhibits A, B, and C) as context of defendant's communication, which tend to show that the posting of June 2 and 3 was an actual, credible threat. The government must also prove that defendant threatened with intent "intent to impede, intimidate, and interfere with such judges while engaged in the performance of official duties" or "with intent to retaliate against such judges." To establish defendant's intent, the government plans to admit some of defendant's other postings on his blog (Exhibits D and E), a voicemail defendant left for an agent with the FBI (Exhibit F), a clip from defendant's radio webcast available at halturnershow.com (Exhibit G), and certain emails sent from defendant (Exhibits H, I, J, and L).

---

[1]Documents filed before the case was transferred to the Eastern District of New York are labeled with the Northern District of Illinois case number, *United States v. Turner*, 09 CR 542.

## II. Evidence For Which The Government Seeks Admission

| Exhibit | Date | Description |
|---------|------|-------------|
| A | 6/3/2009 | Website posting titled, "What the abortion shooter did wrong; not the shooting, learn how not to get caught" |
| B | 6/3/2009 | Website posting titled, "Another Abortion Target Volunteers" |
| C | 6/2/2009 | Website posting titled, "State Restricts Catholics from Politics" |
| D | 1/25/2009 | Website posting titled, "A Tyrant in Garrison, NY," regarding SDNY district court judge |
| E | 2/20/2009 | Website posting titled, "Fucking Federal Judges Never Learn - but I hereby WARN one of them" |
| F | 3/6/2008 | Voicemail to FBI about defendant's life being "in jeopardy" if it was revealed that he was informant for the FBI |
| G | 5/13/2009 | Radio webcast explaining defendant's increased willingness to call for public officials to be killed |
| H | 11/18/07 | Email to FBI in reference to a student who taunted readers on defendant's blog, asserting, "Apparently, this guy is under the delusion that the pro-White folks who visit my site are all talk. What [a] stupid bastard" |
| I | 1/25/2009 | Email to Deputy US Marshals stating, "I have just outed the home town info of a federal district judge. You may wish to take appropriate steps to insure her safety." |
| J | 5/31/2009 | Email to supporter of defendant encouraging supporter to attack public officials on July 4, 2009 |
| K | 6/1/2009 | Email to reader acknowledging that defendant would kill certain public officials |
| L | 6/2/2009 | Email to person criticizing defendant, threatening to pass along a work address to "[defendant's] friends in the White racist skinhead groups out on the west coast" and remarking, "[i]t ought to be funny to see what happens when they catch you coming out of work." |

## A.     Surrounding Blog Postings on Defendant's Website

Defendant's blog posting targeting Judges Easterbrook, Posner, and Bauer was not the only entry available on defendant's website, turnerradionetwork.blogspot.com. He published several other postings near the time of his alleged threat on June 2 and 3, 2009. Defendant's blog entries appeared to his readers in reverse chronological order, hence the entries were displayed directly above and below the alleged threat. For instance, on June 3, at 12:24 pm (three and a half hours after defendant updated his website to provide information about where the judges could be found), defendant published an entry titled, "Tonight: What the abortion shooter did wrong; not the shooting, learn how to not get caught!" *See* Ex. A. Below this heading, defendant wrote:

> Tonight at 9:00 PM, "The Hal Turner Show" will talk about the recent killing of an abortionist and what the shooter did wrong. No, not the shooting itself; but rather what he did wrong that got him caught!

> We'll talk at length about how to carry out such an act and significantly reduce the chances of getting caught.

> Lets face it; America is in big trouble and only force and violence are going to clean it up. Tonight, we'll talk about how to use force and violence and not get caught.

> Tonight at 9:00 PM at TurnerRadioNetwork.com or just click the LISTEN LIVE logos at the top left of this page to tune-in FREE!

At 3:49 p.m. that day, defendant published another entry titled, "Another Abortion Target Volunteers." *See* Ex. B. Below this heading, defendant wrote:

> After the killing of abortionist George Tiller, another "doctor" has publicly announced he wishes to take Tiller's place to continue partial birth abortions!

> Physician [Name] of Omaha, NE wants to continue providing third-term abortions after the brazen slaying of his friend and colleague George Tiller.

Gee, this is becoming a "target-rich environment!"

I suspect someone has a bullet for this guy too. I guess we'll just have to wait and see.

Before the alleged threat against Judges Easterbrook, Posner and Bauer, on June 2, 2009, at 10:01 a.m., defendant invoked the phrase "obey the constitution or die" in an entry titled, "State Restricts Catholics from Politics," which dealt with proposed legislation to modify the rules that governed the Catholic Church. *See* Ex. C. Defendant wrote (emphasis added):

> It is very clear to us at the Turner Radio Network that the state of Connecticut has become tyrannical and abusive. It is actively and aggressively attempting to directly interfere with the internal governance of a church and the free exercise of religion. It is retaliating against citizens for exercising their right to petition for redress of grievances. This is tyranny and it must be put down.
>
> While filing a lawsuit is quaint and the "decent" way to handle things, we at TRN believe that being decent to a group of tyrannical scumbags is the wrong approach. It's too soft. Thankfully, the Founding Fathers gave us the tools necessary to resolve tyranny: The Second Amendment.
>
> TRN advocates Catholics in Connecticut take up arms and put down this tyranny by force. To that end, THIS WEDNESDAY NIGHT ON "THE HAL TURNER SHOW" we will be releasing the home addresses of the Senator and Assemblyman who introduced Bill 1098 as well as the home address of Thomas K. Jones from the OSE.
>
> After all, if they are so proud of what they're doing, they shouldn;t [sic] mind if everyone knows where they live.
>
> It is our intent to foment direct action against these individuals personally. These beastly government officials should be made an example of as a warning to others in government: *Obey the Constitution or die.*
>
> If any state attorney, police department or court thinks they're going to get uppity with us about this; I suspect we have enough bullets to put them down too.

> The state pushed; it is about to get pushed back. Elected and other government officials sometimes need to be put in their place. They serve; they do not rule. They need to learn their place or be put there by force.

In an update to this post, on June 2 at 3:38 p.m., defendant wrote, "Officer Boyle of the Connecticut State Capitol Police just called regarding this story. Seems they are concerned about the 'Commentary' below. Looks the tyrants are worried. Good."

## B.   Defendant's Recent Reference to Violence Against Other Judges On His Blog

In the archives of defendant's website, halturnershow.blogspot.com, was an entry dated January 25, 2009, and titled, "A Tyrant in Garrison, NY." Below this heading was a post about a judge on the United States District Court for the Southern District of New York. *See* Ex. D. The entry included the following:

> If Judge Preska fails to start obeying the Constitution, she would do well to remember what happened to another federal Judge that I chose to heap scorn upon: US District Court Judge Lefkow in Chicago. After I heaped scorn upon her, someone went to her house and gunned down her family.

> ...Oh and if you dare try to do anything at all about MY freedom of speech in undertaking these activities, be warned: I will enforce my First Amendment freedom by making swift and effective use of my Second Amendment freedom. The only thing you have to ask yourselves is whether or not you're willing to be on the wrong end of the Second Amendment when my finger is on the trigger. Be assured that I will not hesitate for even a fraction of a second to defend my freedom.

Also within the archived history of Turnerradionetwork.blogspot.com was an entry dated February 20, 2009, titled, "Fucking Federal Judges Never Learn - but I hereby WARN one of them." *See* Ex. E. The entry addressed a Judge of the United States District Court for the District of New Jersey concerning a temporary restraining

order issued against a company in a lawsuit for discriminatory hiring practices:

> Well, I've got news for the latest federal Judge, Dickinson Debovoise and the NAACP concerning this latest hiring freeze spawned by the latest lawsuit: if your actions kill more people, don't expect to walk away unscathed this time.
>
> I don't give a shit about sovereign immunity or the US Marshal Service that protects federal judges. I don't give a shit about laws preventing retaliation against parties to a judicial proceeding. I don't give a shit about US Attorneys bringing Indictments against me or securing court orders against me, because they won't be worth the paper they're written on.
>
> Know now: the days of politically-correct Judges and race-hustling, poverty pimps in the NAACP causing people's deaths without consequence, are over.
>
> The course of action taken by the Judge and the NAACP will, at some point, endanger my life, the lives of my family and the lives of tens-of-thousands of other Hudson County residents. We have an absolute right to defend ourselves -- and this time, we will.
>
> This time, if people die, the people responsible will either be brought to justice or justice will be brought to them.

## C.   Defendant's Voicemail Acknowledging His Personal Fear of Violence From Readers of His Blog

On February 20, 2008, in a voicemail defendant left for FBI Special Agent Steve Kimball, defendant claimed that someone from the FBI reported to NBC News that he had previously worked as an informant for the FBI, which, according to defendant, "put his life in jeopardy." *See* Ex. F. Defendant said,

> Steve Kimball this is Hal Turner. It is 6:34 pm on Wednesday evening. I just got off the phone with NBC Nightly News Chief Washington Correspondent Pete Williams. Ah, we talked about this earlier. Pete Williams told me that NBC Nightly News is going to run a story confirming that I was, at least for a time, an informant with the FBI and addressing whether or not from a public policy standpoint the FBI having me as informant, ah, was a bad public policy decision. Pete Williams told me that several of his longtime sources inside FBI headquarters and in the Washington Field Office confirmed to him that I was in fact an informant. You guys have a leak. This is a violation of Title 50. The

FBI is forbidden from disclosing the names of anyone who gathers intelligence for them. This is gonna put my life in jeopardy. It's gonna ruin everything for the future. And I am fit to be fuckin' tied. I oughta go down to that fuckin' FBI headquarters and pull a Timothy fuckin' McVeigh. I think you should call me back because I am so fuckin' furious it isn't fuckin funny.

### D.   Defendant's Reference to Violence Against Public Officials on His Radio Webcast

Defendant hosted a radio show or webcast on the website www.halturnershow.com. On the website, defendant discussed the topic of killing public officials for not obeying the constitution. For example, on May 13, 2009, defendant said on his radio webcast. *See* Ex. G.[2]

I have decided for myself that in this fight, at this time, in this place, I am willing to kill the people on the other side. I am beyond the notion that they are simply misguided. I have gone past the delusion that if only someone could sit them down and logically show them how their ideas are against natural human development. These people on the other side, they know all that. The liberals, the Socialists, the Marxists, they know all the logical argument that oppose their ideology and they don't care. That's what makes them evil; that's what makes them dangerous. They are a mortal threat to the fabric and history of this Republic and we the people of this country have a right and a duty to confront that mortal threat, to defend ourselves and our way of life from that mortal threat, by *killing* the people trying to pervert this country and destroy what it means to be an American. Ladies and gentleman, we are coming to the point where killing, killing, K•I•L•L•I•N•G, physically depriving the life of someone else, killing is what's on the agenda here in the USA.

### E.   Defendant's Emails Encouraging or Threatening Violence

On November 18, 2007, defendant emailed FBI Special Agent Steve Haug about a student who taunted the readers of defendant's blog in the comments section of defendant's blog. *See* Ex. H. According to defendant, the student also disclosed his

---

[2]The government can make copies of the audio available if they would assist the Court in deciding the motion.

name and address. Defendant remarked, "Apparently, this guy is under the delusion that the pro-White folks who visit my site are all talk. What [a] stupid bastard."

On January 25, 2009, the day defendant blogged about a judge on the United States District Court for the Southern District of New York, defendant sent an email to a deputy United States Marshal, which had the subject line "I have just 'outed' a federal judge's address." *See* Ex. I. In the body of the email, defendant wrote,

> I have just outed the home town info of a federal district court judge. You may wish to take the appropriate steps to insure her safety.

> Details:
> http://halturnershow.blogspot.com/2009/01/tyrant-in-garrison-ny.html

On May 31, 2009, defendant responded to an email he received about the attacks of September 11th being an inside job. *See* Ex. J. Defendant wrote,

> Its nice that eight years after the fact, you and a whole slew of others are still busy behind your keyboards accomplishing nothing. Yes, 9-11 was an inside job. Yes, the government had a hand in it, either directly or my [sic] letting it happen on purpose. Voting has not changed a damned thing since 9-11; the country just keeps getting worse.

> For years, I have been telling folks who listen to my radio show that the only way we're going to fix America is to take up arms and strat [sic] assassinating government officials.

> This July 4, is the date I hope to achieve that.

> SO do us all a favor: shut up with the 9-11 bullshit, pick up a gun or a baseball bat, go to a July 4 parade or other event where your local member of Congress or Senator is attending and do what has to be done.

> This way, you will actually achieve something and not spend the next eight years whining and accomplishing nothing.

> Hal Turner
> http://HalTurnerShow.com

In an email sent on June 1, 2009, defendant was asked, "are you then advocating assassinations of US citizens whose politics you don't agree with?" *See* Ex. K. Defendant replied:

> As for killing citizens whose politics I don't agree with; it depends upon the nature of those politics.
>
> If the politics include adopting socialism or communism, then yes, I absolutely will kill such people because they are no longer fellow citizens because their ignorance will be endangering the very concept of this nation. As such, they are domestic enemies and fair game for slaughter.

In an email on June 2, 2009, at 11:46 responding to a person's criticism, defendant purported to ascertain the emailer's work address and discussed passing on the information to his "White racist skinhead groups out on the west coast." *See* Ex. L. Defendant wrote,

> Do you still work over at
> [Work address]
> I'll be passing your info out to my friends in the White racist skinhead groups out on the west coast. It ought to be funny to see what happens when they catch you coming out of work.

## III.   Argument

The above-described evidence of: (1) the entries defendant published on his website that appear right before and after defendant's alleged threat on his blog (Exhibits A, B, and C); (2) defendant's previous-expressed intent that public officials should be killed (Exhibits D, E, G, J, K); and (3) defendant's acknowledgment that the readers of his blog were prone to act on his publication of personal information (Exhibits F, I, and L) should be admitted at trial because such evidence is "inextricably intertwined" with the charged offenses. Alternatively, this evidence is admissible

10

pursuant to FRE 404(b) as non-propensity evidence of defendant's motive, intent, plan, knowledge, and absence of mistake. *See United States v. Luster*, 480 F.3d 551, 557 (7th Cir. 2007) ("in practice the two standards [inextricably intertwined and Rule 404(b)] may overlap").

### A. The Proffered Evidence is Inextricably Intertwined with the Charged Offense.

As a preliminary matter, this evidence need not be considered under Rule 404(b) at all. "Other acts" evidence is admissible without reference to Rule 404(b) if the evidence arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial. *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997); *United States v. Lahey*, 55 F.3d 1289, 1295-96 (7th Cir. 1995) (evidence admissible where evidence is "inextricably intertwined" with, or completes the story of, a charged offense); *United States v. King*, 126 F.3d 987, 995 (7th Cir. 1997). If the evidence is so related, the only limitation on the admission of such evidence is the balancing test required by Rule 403. *United States  v. Baez*, 349 F.3d 90, 93-94 (2d Cir. 2003); *United States v. Hilgeford*, 7 F.3d 1340, 1345 (7th Cir. 1993).

The proffered evidence is inextricably intertwined with the charged offense in two respects. First, the other blog postings on defendant's website, exhibits A, B, and C, constitute the context of the communication, a key factor in this case. That is, defendant's words constitute a threat if "an ordinary, reasonable recipient *familiar*

*with the context of the communication* would interpret it as a true threat of injury." *United States v. Francis*, 164 F.3d 120, 123 (2d Cir. 1999) (emphasis added); *see also United States v. Parr*, 545 F.3d 491 (7th Cir. 2008); *United States v. Nishnianidze*, 342 F.3d 6, 15 (1st Cir. 2003). These materials are what a reasonable reader of defendant's blog would want to know in determining whether his posting about the Seventh Circuit judges was a serious threat of injury or mere hyperbole. *Cf. Watts v. United States*, 394 U.S. 705 (1969) (*per curiam*) (context of speech made clear that the statement, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." was a joke).

The contextual evidence the government plans to introduce plainly bears on the seriousness of defendant's blog postings on June 2 and 3, 2009. For example, directly above the alleged threat, defendant published an entry about "how to use force and violence and not get caught." *See* Ex. A. To a reasonable observer of the website, defendant's planned lesson on how to kill without getting caught would indicate that his threat was a serious one, particularly since he posted the entry only hours after disclosing the judges' locations and room numbers. Likewise, defendant used the term "obey the constitution or die" twice on June 2, 2009: the first time in reference to Connecticut legislators (Ex. C); the second in reference to Judges Easterbrook, Posner, and Bauer. Surely the former entry, which was readily observable to defendant's readers on June 2 and June 3, informs the meaning of the latter. As the law requires the government to give context to an alleged threat, these materials should be admitted without reference to Rule 404(b).

12

The second key to analyzing the admissibility of the remaining proffered evidence is found in 18 U.S.C. § 115(a)(1)(B), which obliges the government to establish that defendant threatened with "intent to impede, intimidate, and interfere with such judges while engaged in the performance of official duties" or "with intent to retaliate against such judges." Although defendant's blog posting hints at why he was threatening these judges (he believed they issued an unconstitutional ruling), it leaves an incomplete picture. The proffered evidence, however,  "completes the story" of the crime. *Gonzalez*, 110 F.3d at 942. Leading up to the threat against the judges, defendant grew increasingly angry with the government officials who he believed were failing to abide by the Constitution. For example, a mere three weeks before issuing the alleged threat, defendant explained on his radio show that he was fed up with attempting to persuade the "other side" and that violence was the only solution. Defendant resolved that people on the "other side" posed (Ex. G),

> a mortal threat to the fabric and history of this Republic and we the people of this country have a right and a duty to confront that mortal threat, to defend ourselves and our way of life from that mortal threat, by *killing* the people trying to pervert this country and destroy what it means to be an American. Ladies and gentleman, we are coming to the point where killing, *killing*, K·I·L·L·I·N·G, physically depriving the life of someone else, killing is what's on the agenda here in the USA.

Defendant wrote words to similar effect in an email on June 1, proclaiming that he was prepared to have killed people with whom he disagreed, "because they are no longer fellow citizens because their ignorance will be endangering the very concept of this nation. As such, they are domestic enemies and fair game for slaughter." *See* Ex. K.

13

Defendant's escalating willingness to urge violence against his opponents fills a possible void in this case. It explains why the Seventh Circuit's ruling in *National Rifle Association v. City of Chicago*, 567 F.3d 856 (7th Cir. 2009), raised defendant's ire and triggered his call for violence. The ruling was the last straw and provided defendant three public officials through whom to channel his mounting aggression. Defendant was not simply retaliating against these judges over the technical issue of whether precedent called for the Second Amendment to be incorporated to apply to the states. He was also retaliating against these judges for what he perceived them to symbolize – a government bent on disregarding the Constitution. The proffered evidence explains why defendant so readily resorted to threats: persuasion was no longer an option; only threats of violence would stop these judges.

Indeed, evidence shedding light on defendant's intent pertains to a particular element of the charged crime. To determine whether and why defendant had an "intent to retaliate" against these judges, one must know what defendant was retaliating against and its connection to the judges' official duties. This statute explicitly makes the reason for the threat an essential ingredient of the offense, rendering the proffered evidence relevant to the charged crime. *See United States v. Yousef*, 327 F.3d 56, 121-122 (2d Cir. 2003) (in bombing conspiracy case, court admitted written statements made by the defendant of his desire to kill Americans).

The proffered evidence not only establishes defendant's increasing willingness to resort to violence against public officials, it explains why defendant's website and his readership was an ideal means of instilling fear of violence. There was reason to

14

fear defendant's readers. Or, in defendant's words, only a "stupid bastard," would be "under the delusion that the pro-White folks who visit my site are all talk."  Ex. H. Likewise, following his veiled threat of Judge Preska on January 25, 2009, defendant emailed a deputy United States Marshal, stating that the deputy "may wish to take the appropriate steps to insure her safety." Ex. I. And on the day defendant threatened the judges, defendant threatened to pass along the work address of someone who sent a harassing email to defendant's "friends in the White racist skinhead groups on the west coast," remarking that it will be "funny to see what happens when they catch you coming out of work." Ex. L.

Yet perhaps the best evidence that a reasonable person would fear those who read defendant's website is that defendant was *himself* scared of them. When defendant thought his readers would learn that he worked as a confidential source for the FBI, defendant left an emotional voicemail to the FBI, stating, "This is gonna put my life in jeopardy. It's gonna ruin everything for the future. . . . I oughta go down to that fuckin' FBI headquarters and pull a Timothy fuckin' McVeigh." Ex. F.

Although evidence of inextricably intertwined acts is not subject Rule 404(b), it must still be admissible under Rule 403's balancing test. *Gonzalez*, 110 F.3d 936 at 942; *United States v. James*, 464 F.3d 699, 709 (7th Cir. 2006). In applying Rule 403's balancing test of whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, courts have "emphasized that most relevant evidence is, by its very nature, prejudicial, and that evidence must be *unfairly* prejudicial to be excluded." *United States v. Curry*, 79 F.3d 1489, 1496 (7th Cir. 1996)

(internal quotation marks omitted) (emphasis in original); *see also United States v. Gutierrez*, 181 F. Supp.2d 350, 354 (S.D.N.Y. 2002) ("Unfairness does not result from the tendency of the evidence to prove an adversary's case."). "When balancing the prejudice and probative value, the courts of the various circuits have found the scale tipped in favor of admitting evidence of prior bad acts in cases where the acts involved, or explained, the circumstances of the crime charged, where the acts provided the background for, or development of, the crime charged, and where the acts completed the story of the crime on trial." *United States v. Lloyd*, 71 F.3d 1256, 1265 (7th Cir. 1995) (internal citation and quotations omitted);

The probative value of the proffered evidence is by no means substantially outweighed by the danger of unfair prejudice. First, this evidence is uniquely persuasive on the question of defendant's intent regarding the ultimate aim of his conduct. Second, this sort of evidence – that defendant repeatedly called for violence against public officials – is not *unfairly* prejudicial in light of the charged offense; indeed, such evidence is the essence of any case in which section 115(a)(1)(B) is charged. It is not unusual that those who threaten United States officials harbor ill will toward the government, and that ill will forms the basis for the specific intent element contained in the statute.[3] Moreover, it cannot be said this evidence poses any more

---

[3]In this regard, it bears mention that defendant's website, webcasts, and emails includes thousands of items that are far more inflammatory, for which the government has opted not to seek admission. Such items include an image of a tombstone labeled "Federal Judges who Betrayed U.S," many photos of burning crosses and other white supremacist materials, designs for weapons and bombs, and emails encouraging violence against various minority groups.

prejudice than the alleged threat itself. *United States v. Quinones*, 511 F.3d 289, 310 (2d Cir. 2007) (prejudice minimal in admission of other death threats because they "were no more inflammatory than the charged murder itself"). *See generally United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (rejecting Rule 403 challenge where other-act evidence "did not involve conduct more inflammatory than the charged crime"). Accordingly, the proffered evidence should be admitted as evidence intrinsically intertwined with the charged offense.

**B.      The Proffered is Admissible Under Rule 404(b).**

Even if this Court finds that any of the proffered evidence is not inextricably intertwined to the charged crime, the evidence is nonetheless admissible pursuant to Rule 404(b) to show proof of defendant's defendant's motive, intent, plan, knowledge, and absence of mistake with respect to the charged offense. *See* Fed. R. Evid. 404(b).

Under the Second Circuit's broad "inclusionary approach" to Rule 404(b), evidence of prior acts may be admitted for any relevant purpose other than to show criminal propensity. *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003). To be admissible under Rule 404(b), the proffered evidence must pass a four-part test. *Id.* The evidence must: (1) be introduced for a proper purpose, such as proof of intent or motive; (2) be relevant to an issue in the case pursuant to Rule 402; (3) satisfy the probative-prejudice balancing test of Rule 403; and (4) be accompanied by a limiting instruction for the jury, if requested. *Carofino v. Forester*, 450 F. Supp.2d 257, 271-72 (S.D.N.Y. 2006) (citing *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992)). The proffered evidence satisfies this test.

### 1.   The Evidence is Directed Toward Establishing Defendant's Motive, Intent, Plan, Knowledge, and Absence of Mistake.

As for the first prong, the government expects that defendant will put his intent squarely at issue in this trial, claiming that he did not intend to threaten Judges Easterbrook, Posner, and Bauer, as articulated in defendant's motion to dismiss on First Amendment grounds. 09 CR 542, Doc. #24 (asserting that defendant had no "intent to put the judges in question in fear of bodily harm"). That the trial will center on defendant's intent heightens the relevance of the proffered evidence. *United States v. Tuchow*, 768 F.2d 855, 862-63 (7th Cir. 1985) (since the defendant made his intent an issue at trial, the defendant's prior bad acts that addressed his intent became admissible for other purposes, such as intent).

What is more, the charged offense is a specific intent crime, requiring the government to prove that defendant had the specific intent to intimidate, interfere or retaliate against Judges Easterbrook, Posner, and or Bauer. *See United States v. Stewart*, 420 F.3d 1007, 1017 (9th Cir. 2005); *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990). The "government is entitled to introduce evidence of other acts to show intent if the defendant has been charged with a specific intent crime." *United States v. Jones*, 389 F.3d 753, 756 (7th Cir. 2004), *rev'd on other grounds*, 545 U.S. 1125 (2005); *United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir. 1996) (*quoting United States v. Curry*, 79 F.3d 1489, 1495 (7th Cir. 1996)) (courts have "oft held that 'when a defendant is charged with a specific intent crime, the government may present other acts evidence to prove intent'").

18

To discharge its burden and present evidence on this disputed issue, the government seeks to admit the proffered evidence, which bears on defendant's intent, motive, knowledge, and plan. In terms of motive and intent, the proffered evidence reveals that in the weeks leading up to the alleged threat, defendant became increasingly enraged and bent on violence against government officials (*See* Ex. G, J, K). This anger came to head June 2, when defendant issued a threat-laden blog post about certain Connecticut legislators (Ex. C). He followed up that entry with the threat charged in this case.

In terms of knowledge and plan, defendant claimed in his motion to dismiss that he is a mere "shock jock" who "does not command anyone" and that the judges therefore had nothing to fear. 09 CR 542, Doc. #24 at 9. The private communications the government seeks to admit belie defendant's self-serving assurances. Defendant believed that his readers were willing to act, as evinced by defendant's voicemail in which the prospect of being revealed as a confidential source caused him to fear for his life (Ex. F) and by defendant's email that only a "stupid bastard" would be "under the delusion that the pro-White folks who visit [defendant's] site are all talk." Ex. H. More specifically, defendant knew that he could rely on those readers to instill fear. Only one day before defendant's alleged threat, he retaliated against an angry emailer by looking up his work address and promising to "pass[] [the] info out to [defendant's] friends in the White racist skinhead groups out on the west coast." Defendant continued, "It ought to be funny to see what happens when they catch you coming out of work." *See* Ex. L.

19

Accordingly, the proffered evidence is directly relevant to a matter at issue other than propensity and, therefore, the first prong of the Rule 404(b) analysis is met.

### 2.   The Evidence is Relevant.

The second prong of the Rule 404(b) analysis requires the government to demonstrate that the evidence of defendant's "other acts" is relevant. For a specific intent crime, courts permit a broader range of activity for establishing a defendant's intent.

In *United States v. Torres*, 977 F.2d 321, 323 (7th Cir. 1992), for example, a defendant was charged with intentionally threatening a federal witness. As evidence of the defendant's retaliatory intent, the government offered two completely unrelated incidents: an earlier confrontation with an individual during which the defendant fired a gun and an arrest for possessing a concealed weapon after police received information that he had been involved in a fight. *Id.* In analyzing whether the two incidents were similar enough for Rule 404(b), the Seventh Circuit reasoned that: "Where the issue addressed is defendant's intent to commit the offense charged, the relevancy of the extrinsic evidence derives from the defendant's indulging himself in the same state of mind in the preparation of both the extrinsic and charged offenses." *Id.* at 326 (*quoting United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (*en banc*)). Because each of the extrinsic criminal acts had been carried out with "the same type of retaliatory intent" as involved in threatening the federal witness, the court affirmed the district court's admission of this evidence under Rule 404(b). *Id.* at 326-27.

20

Here, the previous threats among the proffered evidence are far more similar than the extrinsic acts involved in *Torres*. The previous threats (Exhibits C, D, and E) use similar language and, as for timing, they all occurred within months – sometimes hours – of the alleged threat. *Compare United States v. Myers*, 503 F.3d 676, 682 (8th Cir. 2007) (one year time-gap between charged threat and uncharged threat does not "destroy the probative value of the evidence").

The other proffered evidence is likewise relevant. As described above, defendant's growing anger toward public officials who he believed were violating the Constitution bears on the alleged threat because that is the precise reason defendant issued his blog post of June 2 and June 3. The remaining proffered evidence is relevant because it shows, contrary to defendant's claim, that he realized that the publication of personal information on his website could instill fear, largely because of the violent nature of his readership. Indeed, defendant experienced that fear when he thought NBC News would be writing a story about him being a confidential source with the FBI. Ex. F. Accordingly, the second prong of the Rule 404(b) analysis is met.

### 3. The Probative Value of the Evidence is Not Substantially Outweighed by the Danger of Unfair Prejudice.

The probative value of the evidence of defendant's other acts is not substantially outweighed by danger of unfair prejudice to defendant. Here, the evidence of defendant's other threats and encouragement of violence against public officials is directly relevant to demonstrate defendant's motive and intent in threatening Judges Easterbrook, Posner, and Bauer on June 2 and June 3. In fact, the evidence of the

other acts is likely to significantly refute defendant's defense that his words merely constitute "politically charged rhetoric of someone unhappy with the Judges' decision in *NRA v. Chicago*." 09 CR 542, Doc. #24 at 9.

Two instructive cases on this issue are *United States v. Parr*, 545 F.3d 491 (7th Cir. 2008) and *United States v. Yousef*, 327 F.3d 56, 121-122 (2d Cir. 2003). Parr was charged with threatening to use a weapon of mass destruction against a federal government building, in violation of 18 U.S.C. § 2332a(a)(3) & (a). The Seventh Circuit approved the admission of an assortment of evidence under Rules 404(b) and 403 that bore on Parr's intent, including the testimony of three of Parr's ex-girlfriends and two former neighbors who testified that Parr had long hated the government, experimented with explosives, and admired domestic terrorists. *Id.* at 496. Likewise, in *United States v. Yousef*, 327 F.3d 56, 121-122 (2d Cir. 2003), a bombing conspiracy case, the Second Circuit approved admission of a defendant's written statements regarding a desire to kill Americans. The court found that the statements were probative of the defendant's motives for undertaking such serious conduct: he wanted to retaliate against the United States for its support of Israel. *Yousef* further upheld the admissibility of evidence of the defendant's threats against persons in other countries that supported Israel.

Both *Parr* and *Yousef* credit the admission of evidence suggesting a motive for the threat of violence, notwithstanding its inflammatory nature. They teach that when a defendant puts his intent at issue, particularly in a case involving a specific intent crime, a defendant cannot in turn disable the government from discharging its burden

22

of establishing intent simply because the evidence necessarily reveals the defendant's extreme views, particularly if those extreme views animate the charged offense.

Finally, to the extent the proffered evidence is admitted under Rule 404(b), it bears emphasis that it will be offered with an appropriate limiting instruction to the jury noting that the evidence may only be used for a limited purpose, if defendant so requests. Accordingly, because the probative value of the evidence is significant and the prejudicial effect can be minimized with proper limiting instructions and presentation of the evidence, the fourth prong of the Rule 404(b) test is met.

## III.    Conclusion

For all of the reasons detailed above, the Court should admit the proffered evidence as intrinsically intertwined to the charged offense or under Rule 404(b).

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:    *s/William E. Ridgway*
WILLIAM E. RIDGWAY
WILLIAM HOGAN
Assistant U.S. Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
(312) 469-6233

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 650 |
| vs. | ) | Judge Donald E. Walter |
| | ) | |
| HAROLD TURNER | ) | |

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

**Government's Motion to Admit Evidence Inextricably Intertwined With The Charged Offense and Admissible Under Rule 404(b)**

was served on October 16, 2009, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:     */s/ William Ridgway*
WILLIAM E. RIDGWAY
WILLIAM HOGAN
Assistant United States Attorneys
219 South Dearborn Street, Suite 500
Chicago, IL 60604
(312) 469-6233

24