UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 650 |
| vs. | ) | Judge Donald E. Walter |
| | ) | |
| HAROLD TURNER | ) | |

**<u>Government's Consolidated Motions *In Limine*</u>**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully moves the Court, *in limine*, as follows:

**I.     Forms of Argument or Evidence Related to Public Authority or Assistance to the Government**

The government respectfully moves *in limine* to preclude defendant from arguing or otherwise presenting evidence predicated on a public authority defense. Although defendant has not invoked such a defense (*see* Federal Rule of Criminal Procedure 12.3), he has claimed his innocence based on facts that could *only* have relevance as part of a public authority defense, namely, that when defendant served as a confidential source for the FBI, agents "taught" defendant "what was legal and what was out of bounds" in terms of the First Amendment. 09-CR-542, Doc. #36 at 15.[1]

Defendant worked intermittently for the FBI as a confidential source between June 12, 2003, and January 4, 2008. In exchange for money, defendant provided information about various individuals within the white supremacist community and

---

[1]Documents filed before the case was transferred to the Eastern District of New York are labeled with the Northern District of Illinois case number, *United States v. Turner*, 09 CR 542.

other radical right-wing groups. To gather information, defendant would attend rallies held by these radical right-wing groups and report on who attended and what was said. Defendant also passed along information about those who published threatening comments on his website. Defendant was closed as a confidential several times due to the rallies he would host and for what he published on his website; the final closure came on January 4, 2008.

This Court should preclude defendant from arguing or eliciting evidence arising out of his time as a confidential source for the FBI, including what the FBI allegedly told him was First Amendment protected. Insofar as defendant allegedly thought his blog post about Judges Easterbrook, Posner, and Bauer was First Amendment protected, he was wrong as a matter of law, as this Court has already ruled. 09 CR 650, Doc. #6. And mistake of law is no defense. *United States v. Ansaldi*, 372 F.3d 118, 128 (2d Cir. 2004) ("Ignorance or mistake of law is not a defense").

Apart from an impermissible mistake of law argument, the only plausible way the evidence of defendant's work for the FBI could tend to refute defendant's intent is through a public authority defense, for which defendant cannot make a *prima facie* showing. The Supreme Court has encouraged district courts to examine before trial whether a defendant can demonstrate that he meets all elements of his proposed affirmative defense, and, if defendant cannot, to bar the evidence at trial. *United States v. Bailey*, 444 U.S. 394, 415-17 (1980). In *Bailey*, the trial at issue was lengthened five days unnecessarily by the presentation of evidence of an alleged affirmative defense although it was clear that the defendant could not meet one of the required elements

2

of the defense. *Id.* In holding that a pretrial barring of this evidence would have been permissible (and preferable), the Court explained:

> The requirement of a threshold showing on the part of those who assert an affirmative defense to a crime is by no means a derogation of the importance of the jury as a judge of credibility. . . . On the contrary, it is a testament to the importance of a trial by jury and the need to husband the resources necessary for that process by limiting evidence at trial to that directed at the elements of the crime or at affirmative defenses. If, as we here hold, an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of this defense.

*Id.* at 416. Allowing evidence of incomplete defenses has the "potential for wasting valuable trial resources." *Id.* at 417.

Since the *Bailey* decision, many courts of appeal have upheld the pretrial exclusion of affirmative-defense evidence where the defendant has failed to demonstrate evidence on one or more elements of the asserted defense. *See United States v. Pardue*, 385 F.3d 101, 108-09 (1st Cir. 2004) ("In order to establish a prima facie case for entrapment by estoppel, a defendant must put forth an affirmative representation by a government official that his conduct was or would be legal."); *United States v. Neville*, 82 F.3d 750, 762 (7th Cir. 1996) (affirming preclusion of defense and noting that the "reasonableness" required under the belief prong of a government authority defense "is objective"); *United States v. Howell*, 37 F.3d 1197, 1206 (7th Cir. 1994) (affirming preclusion because defendants "failed to make a prima facie showing of entrapment by estoppel"); *United States v. Achter*, 52 F.3d 753, (8th Cir. 1995) (affirming preclusion of "public authority" or "entrapment by estoppel" defenses and noting that "[b]oth public authority and entrapment by estoppel require

3

a defendant to establish that he reasonably relied on the representations of a government official"); *United States v. Reyes-Vasquez*, 905 F.2d 1497, 1501 (11th Cir. 1990) (upholding trial court's exclusion of public authority evidence where defendant could not meet elements of defense).

The Second Circuit is particularly willing to exclude defenses based on public authority, as it recognizes that "great caution should be exercised when it comes to the application of [this] defense." *United States v. Corso*, 20 F.3d 521, 528 (2d Cir. 1994); *see also United States v. Fish*, 388 F.3d 284, 287 (7th Cir. 2004); *Neville*, 82 F.3d at 761; *Howell*, 37 F.3d at 1206 (holding that where the defendants provided "neither a basis in law nor factual predicates from the evidence presented at trial for entrapment by estoppel," they were not entitled to a jury instruction on it).

In the Second Circuit, the defense may take two closely-related forms. One, sometimes called "actual public authority," depends on the proposition that the defendant's actions, although ostensibly in violation of some statute, were in fact lawful because he was authorized by the government to perform those acts. The second version, usually termed "entrapment by estoppel," depends on the proposition that the government is estopped from prosecuting the defendant where the government procured the *charged offense* by leading defendant to reasonably believe he was authorized to commit the crime. Defendant cannot meet his pretrial burden under either theory.

## A.     Actual Public Authority

Under Second Circuit law, an actual public authority defense exists where a defendant has in fact been authorized by the government to engage in activity that forms the basis for the charge. That is, the defendant's conduct was, in fact, legitimized by government action. *See United States v. Schwartz*, 924 F.2d 410, 423 (2d Cir. 1991); *United States v. Duggan*, 743 F.2d 59, 83-84 (2d Cir. 1984); *see also United States v. Anderson*, 872 F.2d 1508, 1516 (11th Cir. 1989). Here, however, defendant cannot claim the FBI authorized his threat against Judges Easterbrook, Posner, and Bauer, not least because he had been cut off as a confidential source since January 4, 2008. Defendant has marshaled nothing to the contrary; indeed, in his emails to the FBI he not only acknowledged that he had been cut off as a confidential source, he attempted to intimidate the FBI into renewing him as a source. On March 1, 2008, defendant emailed an agent with the FBI about a person who was planning a crime. *See* Ex. 1. Defendant wrote,

> Naturally, I would not be disposed to reveal whether or not I knew of his plans, but I will say the bureau made a terrible mistake closing me and I urge in the strongest terms possible the Bureau re-visit the issue by march 15.
>
> If I am not fully re-opened and fully paid for my previous work by March 15, there won't be any way to re-open me after that day and I will provide no information whatsoever about things . . . . rumored . . . . to be in the works

On March 7, 2008, when defendant was informed there would be "no change in [defendant's] status in the foreseeable future," defendant wrote that "until" he is renewed as a source he "will just ratchet-up the pressure until it gets so bad, incites and foments so much 'activity' either the government or the bureau relents." Ex. 2.

5

Of course, the government disagrees that defendant was ever authorized to threaten public officials. But even if this were so, such authority would be irrelevant for purposes of this case, as defendant is not charged with any crimes ocurring between June 2003 and January 2008. *See United States v. Giffen*, 473 F.3d 30, 40 (2d Cir. 2006) ("Even if [the defendant] was authorized to commit a crime that is *not* charged in the indictment, this does not give him a defense to the crimes that *are* charged in the indictment.") (emphasis in original). In short, there is no plausible argument that the FBI authorized him to threaten Judges Easterbrook, Posner, and Bauer.

## B.    Entrapment by Estoppel

The defense of entrapment by estoppel is grounded in the proposition that the government is barred from prosecuting a person for his criminal conduct when the government induced him to commit the crime at issue and led him to rely reasonably on his belief that his actions would be lawful by reason of the government's seeming authorization.

An example of evidence sufficient for a jury instruction on entrapment by estoppel is found in *United States v. Abcasis*, 45 F.3d 39 (2d Cir. 1995). There, two defendants were authorized to engage in illegal narcotics transactions as confidential informants for the DEA. Because it was unclear in the record whether the defendants were ever told that they had recently been terminated as informants for the DEA, the Court ruled that an instruction on public authority was appropriate, even though there was "good reason to . . . doubt" the theory. *Id.* at 44. The Court emphasized an important caveat, however: "the defendant's conduct must remain within the general

6

scope of the solicitation or assurance of authorization; this defense will not support a claim of an open-ended license to commit crimes." *Id.* at 43-44.

Defendant is not entitled to assert the defense of entrapment by estoppel. As discussed above with respect to actual public authority, defendant had been cut off as a confidential source for the FBI since January 2008, well over a year before the charged threat he issued on June 2 and 3, 2009. Defendant cannot claim the FBI reasonably *appeared* to have instructed him to threaten Judges Easterbrook, Posner, and Bauer. Instead, his defense would amount to the claim that a prior authorization to threaten a public official years ago (which, of course, never happened) somehow carries over indefinitely to authorize the threat on June 2 and 3, 2009. Under this theory, the defendant would have carte blanche to threaten violence for the rest of his life simply because defendant thought he had been authorized to do so years ago, a proposition that has no moorings in the law. The government's alleged "instructions" years before in no way authorized defendant to threaten these judges. *See Abcasis*, 45 F.3d 39 at 43-44 ("The defendant's conduct must remain within the general scope of the solicitation or assurance of authorization; this defense will not support a claim of an open-ended license to commit crimes"); *see also United States v. Patient Transfer Serv., Inc.*, 413 F.3d 734, 742-43 (8th Cir. 2005); *United States v. West Indies Transp., Inc.*, 127 F.3d 299, 313 (3d Cir. 1997); *United States v. Treviño-Martinez*, 86 F.3d 65, 70 (5th Cir. 1996).

Under these circumstances, the considerations of fairness that underlie estoppel give no reason to bar the government from prosecuting defendant for the charged

crimes, because, even under defendant's construction of the facts, the FBI neither induced him to threaten these judges nor led him to an objectively reasonable belief that he had received such authorization. *See Neville*, 82 F.3d at 762 ("Even if [defendant] somehow truly believed that she was indeed a 'government agent,' this is unavailing, for reasonableness in this context is objective."); *United States v. George*, 386 F.3d 383, 399 (2d Cir. 2004) ("[T]o invoke the entrapment by estoppel defense, the defendant must show that he relied on the official's statement and that his reliance was reasonable in that a person sincerely desirous of obeying the law would have accepted the information as true.") (internal quotation marks omitted).[2] *Giffen*, 473 F.3d at 43 (rejecting notion that estoppel defense would "grant any criminal carte blanche to violate the law should he subjectively decide that he serves the government's interests thereby").

Of course, if permitted, the evidence defendant apparently wishes to adduce will not only considerably lengthen the trail, it will confuse the jury and lead to a sideshow that has no relevant bearing on defendant's intent in June 2009. *See Hunter*, 797 F.2d

---

[2]The fact that the FBI did not inform defendant that his threats were illegal, as he claims, does not reasonably support a claim that the conduct was being authorized. *See Pardue*, 385 F.3d at 108-09 ("In order to establish a prima facie case for entrapment by estoppel, a defendant must put forth an affirmative representation by a government official that his conduct was or would be legal."); *West Indies Transp., Inc.*, 127 F.3d at 313 (holding that entrapment by estoppel applies where, *inter alia*, a government official "told the defendant that certain criminal conduct was legal"); *United States v. Spires*, 79 F.3d 464, 466 (5th Cir. 1996) ("The defense of entrapment by estoppel is applicable when a government official or agent actively assures a defendant that certain conduct is legal and the defendant reasonably relies on that advice and continues or initiates the conduct.").

at 1424 (if prior complaint had been admitted into evidence, the opposing party "would have been entitled to explore" the significance of the rejection of the complaint by the agency to whom it had been made, the scope of its investigation and other issues, "and the parties would have been off on a chase after shadows"). Indeed, the confusion and resultant mini-trials the evidence would cause justifies exclusion of the evidence under Rule 403 alone. *See e.g.*, *Grimm*, 568 F.2d at 1136 (evidence of lawful transactions "could have complicated the case and confused the jury").

Given that defendant's work as a confidential source for the FBI cannot form the basis for a public authority defense, the government requests that this Court preclude defendant from arguing or otherwise presenting evidence regarding defendant's service as a confidential source.

If, however, the defendant is allowed to proceed with a public-authority defense, the government seeks an *in limine* ruling that Federal Rule of Evidence 404(b) and 801(d)(2)(E) allow the admission of evidence tending to rebut such a defense, including: (1) the Attorney General guidelines read to defendant on numerous occasions, which provided that he was "not authorized to engage in criminal activity"; (2) the several admonishments he received regarding the menacing language he used on his website and radio show; and (3) his several emails to the FBI following closure on January 4, 2008, in which he promised to "ratchet-up" his threats unless he was renewed as a confidential source. Moreover, the government seeks a ruling *in limine* regarding the scope of admissible evidence to avoid confusing or misleading the jury.

For all these reasons, any defense or evidence relating to "public authority" should be excluded, including any reference to defendant's service as a confidential source for the FBI as it bears on defendant's intent.

## II. Reference to Whether Defendant Intended to Carry Out the Threat or Harm the Judges

It is well-established that the government is not required to prove that the defendant in a threat case intended or was able to carry out his threats, *Virginia v. Black*, 538 U.S. 343, 359-60 (2003); *United States v. Fuller*, 387 F.3d 643, 647-48 (7th Cir. 2004); *United States v. Hoffman*, 806 F.2d 703, 707 (7th Cir. 1986), a proposition this Court recognized in its order denying defendant's motion to dismiss. *See* 09-CR-650, R. 6 at 3 ("the speaker does not have to actually intend to carry out the threat"). The reason, this Court explained, citing the Supreme Court's decision in *Virginia v. Black*, is that "in addition to protecting individuals from the possibility that the threatened violence will occur, the prohibition also protects individuals from the fear of violence and disruptions that such fear engenders." *Id.* That is, anti-threat statutes differ from attempt or conspiracy statutes, which require that the defendant act or agree to commit the predicate crime.

In the face of this black-letter law, defendant apparently maintains that he is innocent because he purportedly did not intend to carry out the threat. *See, e.g.*, 09 CR 542, Doc. #36 at 16 ("The evidence against Turner is so deficient it constitutes a fraud upon the court, as . . . Turner informed arresting agents that he had no intention of harming the judges."). Defendant's (dubious) claim that he intended no harm to the

10

judges is irrelevant, however. What is admissible is whether defendant published his blog post with intent to impede, intimidate, interfere, or retaliate against Judges Easterbrook, Posner, and Bauer on account of the performance of their official duties. Accordingly, the government respectfully moves *in limine* to preclude defendant from arguing or otherwise presenting evidence regarding whether defendant intended to carry out the threat of harm the judges.

## III.   Reference to Whether The Alleged Threat Was Communicated to The Judges

As this Court recognized in its order denying defendant's motion to dismiss, a speaker need not communicate the threat to his victim. 09 CR 650, Doc. #6 at 3; *see also United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008); *Fuller*, 387 F.3d at 647-48; *Hoffman*, 806 F.2d at 707. As such, the government respectfully moves to preclude defendant from referring to whether he or anyone else specifically communicated the alleged threat to Judges Easterbrook, Posner, and Bauer, aside from the fact that it had been posted on the Internet.

## IV.   Forms of Argument or Evidence Designed to Elicit Jury Nullification

The government respectfully moves this Court to preclude the defendant from arguing, or otherwise presenting evidence or pursuing lines of inquiry designed to elicit, jury nullification. The law is plain that it is improper for the defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. *See, e.g., United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed

to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.");*United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant."); *see generally Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("Neither court nor counsel should encourage jurors to exercise [nullification] power. . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification.").

Although the government is unable to anticipate each form of "jury nullification" argument or evidence that defendants may seek to interject into this trial, the government does note the following examples:

## A.    Argument or Evidence Related to the Freedom of Speech or the First Amendment

This Court has held "as a matter of law that the First Amendment does not protect defendant from prosecution under the specific facts presented in this case." 09 CR 650, Doc. #6 at 5. Consequently, the government moves to preclude reference to the First Amendment or the freedom of speech. The only question the jury needs to decide is whether defendant's blog post about Judges Easterbrook, Posner, and Bauer constitutes a threat under 18 U.S.C. §115(a)(1)(B); if it does, then the post is

12

unprotected speech. Hence, the First Amendment is a legal defense decided by the motion to dismiss that the jury need not weigh in on and any argument or evidence related to the First Amendment or freedom of speech would simply confuse and mislead the jury and should be excluded.

### B.   Argument or Evidence of "Outrageous Government Conduct"

There is an "increasing tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted). The "thrust of the defense" in these types of cases "is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Griffin*, 867 F. Supp. at 1347. In the face of this increasing tendency to interject themes of "government misconduct" into a defense strategy, courts routinely have granted motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, 1991 WL 236492, at *3 (N.D. Ill. 1991); *United States v. Finley*, 708 F. Supp. 906, 913-14 (N.D. Ill. 1989) (granting motion *in limine* to preclude evidence "which is not relevant to defendants' guilt but is designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation.").

The issue of government misconduct is a matter of law for determination by the court, not the jury. *United States v. Nunez-Rios*, 622 F.2d 1093, 1099 (2d Cir. 1980)

("the issue of outrageous government conduct is not an issue for the jury"); *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that the issue is not a jury question) (citations omitted).

## V.     Discovery Requests or Commentary Regarding Discovery in Presence of Jury

The government respectfully moves to preclude counsel from requesting discovery from witnesses or government counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury. Such requests from counsel in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. In fact, it often happens that counsel's requests are ill-founded because the discovery has already been tendered or is not subject to disclosure. In any event, these requests, if appropriate, can easily be made to the Court or opposing counsel outside the presence of the jury with no prejudice resulting to either side.

Accordingly, the government moves that requests for discovery or comments relating to discovery be made outside the presence of the jury. This system has been used in other cases and has worked well. The government believes it is a fair and sensible one to employ here. *See generally Thompson v. Glenmede Trust Co.*, 1996 WL 529693 (E.D. Pa. 1996) ("Rather than focus on the issues in the case, the jury may instead be misled by the irrelevant side issues of the discovery process. Therefore, the Court will not permit either party to refer to the discovery process in the presence of the jury at trial.").

## VI.   Penalties Faced by Defendant

The government respectfully moves this Court to preclude the defendants from introducing evidence, making argument, or otherwise mentioning the potential penalties faced by the defendants if convicted. Courts have unequivocally held that "arguing punishment to a jury is taboo." *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997); *see also United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991) (holding that "the sixth amendment requires that a jury determine questions of guilt or innocence; punishment is the province of the Court"). Such argument or evidence concerning punishment is improper because the law is well-settled that the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon*, 512 U.S. at ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."); *United States v. McCracken*, 488 F.2d 406, 423 (5th Cir. 1974) ("Except where a special statutory provision mandates a jury role in assessment or determination of penalty, the punishment provided by law for offenses charged is a matter exclusively for the court and should not be considered by the jury in arriving at a verdict as to guilt or innocence."). Mention of the potential penalties faced by the defendants would serve only the improper purpose of jury nullification.

Proscribed mention of penalties should include not only specific reference to years in jail, but also what is becoming a more common theme in defense arguments that the defendant is "on trial for his life," or that the defendant's "freedom" hangs on the outcome of the jury's decision, or similar types of arguments. Each of these arguments invites the jury to consider the penal consequences of a conviction on a defendant and, therefore, are wholly improper. Accordingly, the defendant should be precluded from in any way mentioning potential penalties.

## VII.  Evidence and Argument of Appropriate Lawful Conduct

The government respectfully moves the Court to exclude all evidence of defendant's lawfulness except reputation or opinion evidence offered by character witnesses strictly in accord with the limitations of Federal Rule of Evidence 405(a).[3] Other than testimony from character witnesses fitting within the narrow confines of Rule 405(a), no such evidence is admissible.

In an effort to distract the jury from the charges for which the defendant is standing trial, the defendant may seek to elicit from government witnesses, or present through his own witnesses, testimony that on prior occasions the defendant was

---

[3]Even evidence offered under Rule 405(a), of course, cannot include specific instances of good conduct: it is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct. See Advisory Committee Notes to Rule 405 (The rule "contemplates that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . . [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given i.e. be confined to the nature and extent of observation and acquaintance upon which the opinion is based").

lawfully blogging about public policy and public officials or committed good acts, for instance, in reporting information to the FBI even when he was no longer a confidential source. Such evidence could be affirmatively offered, but could also take the form of questions posed during cross-examination, such as: (a) isn't it true the defendant did not do anything improper on this occasion; (b) isn't it true that defendant always treated you with respect; (c) isn't it true that defendant is not a dangerous person; (d) isn't it true that defendant assisted law enforcement; (e) isn't it true defendant sought to help you on other occasions (not relevant to the charged case). The list is endless. Any evidence or argument of this sort is inadmissible, and the Court should exclude it. The law is clear: "A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (excluding taped proof that defendants met regularly and did not discuss criminal activity); *see also United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990) ("Proof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment."); *United States v. Burke*, 781 F.2d 1234, 1243 (7th Cir. 1985) (where private investigator on trial for extorting clients argued that he intended to report clients to FBI, court sustained decision excluding evidence that, in earlier years, he provided information to FBI, stating "[e]vidence that the defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable").

Evidence of other lawful behavior is irrelevant because acts of honesty or good deeds do not prove an absence of illegal acts. *See, e.g.*, *Scarpa*, 897 F.2d at 70; *United States v. Beno*, 324 F.2d 582, 589 (2d Cir. 1963); *Grimm*, 568 F.2d at 1138 (upholding exclusion of evidence that used car dealer paid for some cars instead of stealing them). Courts have consistently excluded evidence of specific acts of lawful conduct by charged defendants. *See, e.g.*, *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) ("evidence of good conduct is not admissible to negate criminal intent"; proffered testimony that was merely an attempt to portray defendant as a good character through the use of prior 'good acts' was properly excluded); *United States v. Marrero*, 904 F.2d 251, 259-60 (5th Cir. 1990) (in false claims prosecution, evidence that defendant did not overcharge in every instance where she had opportunity to do so was irrelevant to whether she overcharged on occasions alleged in indictment); *United States v. Troutman*, 814 F.2d 1428, 1454 (10th Cir. 1987); *United States v. Benedetto*, 571 F.2d 1246, 1250 & n.5 (2d Cir. 1978) ("Evidence of prior performance of official duty without bribe-taking [is] inadmissible in [a] bribery prosecution."); *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978) (in bribery case, inappropriate to permit testimony that charged inspector honestly performed his duties in specific instances).

To hold otherwise would be to eviscerate the carefully drafted limitations of Rule 405, which forbids proof of good character through evidence of specific acts where character is not an element of the charge or defense. *See Beno*, 324 F.2d at 584 and 587. Like Rule 403, Rule 405 is intended to prevent the series of wasteful "mini-trials" that would inevitably ensue if the defendant were allowed to pursue this irrelevant line

18

of inquiry. The Advisory Committee Notes for Rule 405 conclude that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." *See, e.g.*, *Grimm*, 568 F.2d at 1136 (evidence of lawful transactions "could have complicated the case and confused the jury"). To the extent the defendant intends to offer evidence regarding his character, he should be permitted to do so only in accordance with the limitations of Federal Rule of Evidence 405(a). The defendant should not be allowed to introduce evidence that he engaged in lawful activity on other occasions or otherwise committed good deeds — under settled law this is not evidence that he acted lawfully in relation to the charged crimes.

## VIII.  Reference to Whether Defendant Has Been Prosecuted For Previous Threats

Defendant emphasized in his motion to dismiss the fact that "no other prior alleged threats have ever been prosecuted, none." Doc. #24 at 16. It is unclear why defendant regards his prior non-prosecution as relevant, but no matter the reason, it should be excluded. If defendant is claiming his previous "alleged threats" were criminal, then the absence of prosecution goes to a public authority defense, which, as discussed in Part I, requires an *affirmative* representation that the particular charged conduct was authorized. If defendant is claiming his previous "alleged threats" were non-criminal, then the absence of prosecution constitutes impermissible "good acts" evidence, and should be excluded for the reasons explained in Part VII.

19

Moreover, any argument that defendant was somehow singled out for prosecution would amount to a selective prosecution allegation. As the Supreme Court has plainly stated, "[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). "In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Id.* at 464 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

Claims of selective prosecution must be raised before trial and resolved outside the presence of the jury. *See United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (finding issue of selective prosecution is to be determined by the court); *United States v. Jarrett*, 705 F.2d 198, 204-05 (7th Cir. 1983) (finding claims of selective prosecution must be raised before trial). In the instant case, no selective prosecution claim has been submitted to the Court. Likewise, evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus excluded from trial. *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"); *United States v. Berrigan*, 482 F.2d 171, 174-76 (3rd Cir. 1973) (affirming exclusion of evidence relating to "discriminatory prosecution").

20

Of course, as a more general matter, it is also settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See, e.g., United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant"); *Katz*, 1992 WL 137174 at *7 (N.D. Ill. 1992) (granting government's motion *in limine* to preclude inquiry regarding "[t]he subjective intentions or motivations of the agents involved in this case.").

Accordingly, any reference to whether defendant has been prosecuted for pervious threats and argument about the government's motivations for pursuing the instant case should be barred.

## IX.    Notice Regarding Evidence of The Murder of Judge Lefkow's Mother and Husband

Defendant's alleged threat made reference to the murder of Judge Lefkow's husband and mother, proclaiming that "[a]pparently, the 7th U.S. Circuit court didn't get the hint after those killings. It appears another lesson is needed." 09 CR 542, Doc. #1 at 5. He drew an explicit connection between crossing the white supremacist community – as these judges had apparently done on account of their decision in *National Rifle Association* – and murder. Defendant would have known these judges were keenly aware of these murders, as Judge Lefkow is a colleague of the defendant's targets; indeed, the judges all work in the same building. Since the government must

21

demonstrate that defendant's blog posting constitutes a serious, rather than a joking, threat of injury, the government will be presenting evidence that defendant was referring to *real* murders – that on February 28, 2005, Judge Lefkow's husband and mother were murdered in Judge Lefkow's home in Chicago.

The government is willing to reach a stipulation with the defendant that on February 28, 2005, Judge Lefkow's husband and mother were murdered in Judge Lefkow's home. Should, however, the defendant refuse such a stipulation, the government plans to call the necessary witnesses to demonstrate these facts.

## Conclusion

For the aforementioned reasons, the government respectfully requests that its motions *in limine* be granted.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:     s/William E. Ridgway
WILLIAM E. RIDGWAY
WILLIAM HOGAN
Assistant U.S. Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
(312) 469-6233

22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA          )
                                  )     No. 09 CR 650
        vs.                       )     Judge Donald E. Walter
                                  )
HAROLD TURNER                     )

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the

following document:

### Government's Consolidated Motions *In Limine*

was served on October 16, 2009, in accordance with FED R. CRIM. P. 49, FED. R. CIV. P. 5,

LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district

court's system as to ECF filers.

                              Respectfully submitted,

                              PATRICK J. FITZGERALD
                              United States Attorney

                        By:   */s/ William Ridgway*
                              WILLIAM E. RIDGWAY
                              WILLIAM HOGAN
                              Assistant United States Attorneys
                              219 South Dearborn Street, Suite 500
                              Chicago, IL 60604
                              (312) 469-6233