UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA )
)                  No. 09 CR 650
vs.                              )                  Judge Donald E. Walter
)                  Sitting by designation
HAROLD TURNER )

**DEFENDANT'S RESPONSE TO GOVERNMENT'S CONSOLIDATED MOTION
IN LIMINE AND RULE 404 MOTION IN LIMINE**

NOW COMES the Defendant, HAROLD TURNER, by and through counsel,

NISHAY K. SANAN and MICHAEL OROZCO, and respectfully moves this Court to

enter an Order conforming with the relief requested as follows:

### BACKGROUND

On June 24, 2009 the Government filed a criminal complaint against Defendant

Harold Turner. Ex. 1. The complaint alleged that Defendant Turner "[o]n or about June

2, 2009, and June 3, 2009, in the Northern District of Illinois, Eastern Division, and

elsewhere, HAL TURNER," violated Title 18, United States Code, Section 115(a)(1)(B).

The complaint was filed with an attached affidavit from FBI Special Agent John Marsh.

The affidavit describes different postings allegedly made by Defendant Turner on his

website, Turnerradionetwork.blogspot.com. One of those postings forms the basis for the

criminal complaint and the indictment that followed.

In the subject blog post, Mr. Turner communicates his opinion that the published

decision of three judges from the 7th Circuit Court of Appeals makes them worthy of

dying. This communication was not sent directly to anyone, nor did it ever actually

advocate that people commit a crime. One day later Mr. Turner posted the publicly

1

available information of the judges' work addresses and photos, all from a government website. Though anyone could have accessed Mr. Turner's blog, not one scintilla of evidence has been presented which would show that imminent lawlessness was the result of his protected free speech.

On July 22, 2009, the Special September 2008 Grand Jury in the United States District Court for the Northern District of Illinois charged Defendant Turner with threatening to assault or murder three United States judges in violation of 18 USC 115(a)(1)(B). Section 115(a)(1)(B) is as follows:

> (a)(1)Whoever:
> (B) B) threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

*18 U.S.C. § 115(a)(1)(B)*. The indictment is limited to one page and only alleges a vague violation of the statute at issue. Additionally, the indictment is accompanied by no attachments, exhibits or affidavits to support the charge.

As many of the exhibits that are used in this motion are governed by a protective order, all exhibits are being submitted under seal.

**I.    DEFENDANT IS ENTITLED TO USE PUBLIC AUTHORITY AS A DEFENSE AND ALL EVIDENCE WHICH TENDS TO PROVE SAME**

The Government argues that the defendant "worked intermittently for the FBI as a confidential source between June 12, 2003, and January 4, 2008." *Government's Consolidated Motion,* 09-CR-542, Doc.#8, page 1. In doing so, and admittedly by way of their own motion, the Government argues that despite the fact that Mr. Turner was

2

trained and instructed by the FBI as to what was lawful free speech and what was not, he is not entitled to argue or elicit evidence of his time as an FBI informant. The defense concedes that mistake of law is no defense, but no such argument is made here. Defendant can, and by way of the evidence presented in this motion, does provide a prima facie showing of the entitlement to a public authority defense.

The Government argues that under *United State v. Bailey*, 44 U.S. 394 (1980), the trial court should not be 'burdened' with testimony or evidence if only one or part of the elements of a defense can be met, and not all. *See United States v. Pardue*, 385 F.3d 101 (1st Cir. 2004). First, *Bailey* is not instructive, as the case dealt with the affirmative defense of duress where the defendants argued that prison conditions had forced them to escape. In that case the defendant offered no evidence whatsoever, only self serving testimony, and is therefore not instructive or helpful. In the instant matter, the defendant is in possession of hundreds and hundreds of pages provided by the FBI which reveal a long standing and beneficial relationship with Mr. Turner, including hundreds of reports which detail his interaction with his handlers and issues regarding protected free speech.

**A.      Mr. Turner was acting under Public Authority/Assistance**

As the government points out, reasonableness in this context is objective. *United States v. Baker*, 546 F.2d 940 (D.C. Cir. 1976). The public authority defense is often referred to as entrapment by estoppel, though defense counsel would point out there are a multitude of cases that differentiate the two. *See United States v. Neville*, 82 F.3d 750, 761 (7th Cir. 1996). "In essence, it applies when, acting with actual or apparent authority, a government official affirmatively assures the defendant that certain conduct is legal and the defendant reasonable believes that official." *United States v. Howell*, 376

F.3d 1197, 1204 (7th Cir. 1994). The FBI file reveals that Mr. Turner was often admonished about his rhetoric, and told that he could not be protected should he cross the line of the first amendment. Yet, at the same time, he was kept abreast of current case law. So much so that Mr. Turner was often informed about pending criminal cases involving First Amendment issues. *See* **Exhibit A**, Federal Bureau of Investigation Report, Bates No.: 218-221 (advising Mr. Turner of a recent case where a corporation was found criminally responsible for people acting as a result of matter posted on their website.) The government was obviously giving Mr. Turner legal advice.

Yet Agent Haug, the author, goes on to state that the "source's value outweighs the **discomfort** associated with source's rhetoric. *Id.* His actions are being deemed acceptable, implicitly or explicitly, and Mr. Turner has acted no different with regard to his postings in the subject criminal complaint than he has in **all prior postings**. Indeed, the admonishment that Agent Haug references is actually an instruction by him to Mr. Turner as to what he could say, what was acceptable, and how his blog statements needed to be phrased in order to avoid prosecution.

Public authority has been described as an affirmative defense where the defendant uses a defense based upon the fact that he/she reasonably relied upon the authority of a government official to engage in activity. *See United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 (11th Cir. 1994). The eleventh circuit held that the validity of the defense depends upon whether the government agent in fact had the authority to empower the defendant to perform the acts in question. *Id.*. This is exactly what the FBI led Mr. Turner to believe. Not only was he frequently admonished about rhetoric, but he was informed that he could still be prosecuted, that his postings could be refereed to the

United States Attorney's Office, and that he should remind his audience that his rhetoric is not intended to incite violence. *See* **Exhibit B**, Federal Bureau of Investigation Report, Bates No.: 126-128.

Not having been charged, ever, before the present indictment, how can the actions of the FBI be considered anything other then empowering Mr. Turner to believe he was not breaking any laws? He was told his actions could be prosecuted, yet from June 12, 2003 to January 4, 2008, they were not. Yet he has made other controversial remarks about judges, none of which have ever been prosecuted. *See* **Exhibit C**, Star Ledger, May 24, 2007, Margolis, Josh "N.J. Justices under guard after threat." *See* **Exhibit D**, Federal Buraeau of Investigation Report, Bates No.: 1106-1107.[1] The fact that Mr. Turner was no longer providing information as an actual bonafied source is irrelevant, as it is the continued and long lasting relationship and innumerable instances of advice and counseling he was given over the law that makes the public authority defense unquestionably valuable.

Assuming, arguendo, that Mr. Turner cannot present the defense of actual authority, Mr. Turner is unquestionably allowed to put on evidence of the extent of his cooperation with law enforcement. *See United States v. Neville,* 82 F.3d 750, 761 (11th Cir. 1996). It clearly goes to his state of mind and is discussed further below.

### B.    Entrapment by Estoppel

The Government argues that, as a result of Mr. Turner's termination as a confidential informant, he is no longer entitled to use the defense of entrapment by estoppel as it would amount to carte blanche to threaten individuals for the rest of life.

---

[1] For the purposes of this exhibit, it should be noted that in this and other reports Mr. Turner is referred to in the third person as he had changed from a national intelligence source to an international intelligence source. This method was employed to further protect the source's identity.

No such argument is made here, nor does counsel for Mr. Turner argue that he was ever given carte blanche to act illegally. The question is whether or not the defendant was lead to reasonably believe that he was authorized to do an act which is now being treated as forbidden by law. The doctrine depends on the unfairness of prosecuting one who has been led by the government agents to believe his acts were authorized. *See United States v. Brebner,* 951 F.2d 1017, 1025 (9th Cir. 1991).

The Supreme Court established the foundation for the defense of entrapment by estoppel in *Cox v. State of Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). There, the Court overturned the defendant's conviction for picketing near a courthouse where city officials had told him to confine his demonstration to the west sidewalk and he had done so. The Court explained:

> [U]nder all the circumstances of this case, after the public officials acted as they did, to sustain appellant's later conviction for demonstrating where they told him he could "would be to sanction an indefensible sort of entrapment by the State-convicting a citizen for exercising a privilege which the State had clearly told him was available to him."

In *United States v. Nichols,* 21 F.3d 1016, 1018 (10th Cir.), *cert. denied,* 513 U.S. 1005, 115 S.Ct. 523, 130 L.Ed.2d 428 (1994), the Tenth Circuit explained that the defense is warranted where a government agent affirmatively misleads a defendant as to the lawfulness of his conduct and the defendant relies on the misrepresentation, provided the defendant's reliance is reasonable "in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *Id.* (defense rejected in that case because the government agent had spoken ambiguously rather than inaccurately).

Furthermore, for a defendant's reliance to be reasonable, the jury must conclude that " 'a person sincerely desirous of obeying the law would have accepted the information as true and would not have been put on notice to make further inquiries.' " *United States v. Corso,* 20 F.3d 521, 528 (2d Cir.1994) (quoting *United States v. Weitzenhoff,* 1 F.3d 1523, 1534 (9th Cir.1993) (citations omitted)). A defendant has the burden of proving the estoppel. *United States v. Austin,* 915 F.2d 363, 365 (8th Cir.1990).

Mr. Turner has proven that he was acting with the advice of the Federal Bureau of Investigation. He has proven that his reliance on that advice was reasonable, as he continued to be on again and off again with the FBI, yet was never arrested. Buttressing this argument even further, he continued to inform the FBI that he was just a radio personality. They knew him to be nothing more than a shock jock and the Department of Justice chose not to prosecute on numerous other occasions.[2] Again, the question is not so much whether he was authorized to allegedly threaten the judges in question, but whether over the course of his nearly ten year history with the FBI that his conduct and the FBI's training reasonably led him to believe that his conduct was legal. Moreover, if Mr. Turner was terminated in January of 2008, why then was he still in contact with at least two special agents from the FBI who continued to refer to Mr. Turner as a confidential informant? *See* **Exhibit E**, Federal Bureau of Investigation Reports, Bates No.: 289-294.

This is directly analogous to *United States v. Abcasis*, 45 F.3d 39, 45 (2nd Cir. 1995), where defendants who had acted in conjunction with the DEA and served as informants were later prosecuted for a subsequent drug transaction after they had stopped serving in that capacity. In that case the court held that if the defendants' testimony as to

---

[2] Defense will later submit to the court how this amounts to selective prosecution.

the number and contents of government communications is accepted, then a jury might conclude that the agents in fact communicated encouragement or assurance to the defendants and the defendants reasonably relied on that encouragement or assurance in believing they were once again authorized to participate in a narcotics transaction as informants. *Abcasis* is directly analogous to this case.

Any argument that this evidence must be excluded under Rule 403 alone is illogical. The Government chose to play the role of Frankenstein, but now wishes to have no evidence of this alleged monster's creation presented to the jury. Mr. Turner was and is no monster, and he constantly assured the FBI of same. *See* **Exhibit F**, Email to Haug, Bates No.: 265. Moreover, **and this is a fact**, the FBI file is incomplete, and without all of the file produced or made available for review the Government has hand picked the evidence which it deems relevant. *See* **Exhibit G**, Email to Haug, Bates No.: 243 (where Mr. Turner references a deluge of emails yet the FBI file produced to defense counsel may contain about 30). By way of a separate correspondence, this office has requested the complete file and awaits the Government's response.

## II.     THE GOVERNEMNT MUST PROVE INTENT

The Government is of the delusional impression that they need not actually prove the essential elements of a crime in order to find Mr. Turner guilty rather they intend to strong arm the this Court into finding Mr. Turner Guilty before a Jury is even chosen. The Government would have this Court believe that this is a strict liability crime, where the only proof that is necessary to convict is proof of a publication and nothing more. Such is not the case.

When evaluating whether statements constitute a "true threat," the statements "must be viewed 'in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners.' " *Kosma,* 951 F.2d 549, 553-54 (3rd Cir. 1991)(quoting *Watts v. United States,* 394 U.S. 705, 708 (1969)).

Consistent with the holding in *Kosma,* the District Court in *United States v. D'Amario,* 330 Fed.Appx. 409, 2009 WL 1524926 (C.A.3 (N.J.)) instructed that section 115 requires a showing that the defendant intentionally made a statement for the purpose of interfering with official duties which he anticipated would be interpreted by the recipient as a serious expression of an intention to do harm, that the statement was not the result of mistake or coercion, and that the Government need not prove that the defendant actually intended to carry out the threat:

> The key point is whether the defendant intentionally communicated the threat, not whether he intended or had the capability to carry it out. However, the fact that a defendant is incarcerated and cannot immediately carry out a threat is a factor you may consider.
>
> If the government proves beyond a reasonable doubt the existence of a threat by a defendant against the United States judge, you must then consider the remaining element of the offense, whether the defendant possessed the requisite specific intent.
>
> In order for you to find beyond a reasonable doubt the third element of the charged crime that the defendant acted with the requisite intent, you must unanimously agree about what the defendant intended to do. That is, you must all agree that the defendant intended to do one or more of the following things:
>
> One, to intimidate Judge Irenas while engaged in the performance of his official duties;
>
> Two, to obstruct Judge Irenas while engaged in the performance of his official duties;

9

Three, to interfere with Judge Irenas while engaged in the performance of his                           official                           duties;

Four, to retaliate against Judge Irenas on account of the performance of his official                                             duties.

*Id.* The defense concedes that the letter of the law is irrefutable in that the Government need not prove that Mr. Turner intended to carry out any alleged threat contained in his opinion. However, that argument muddies the waters and attempts to bootstrap intent to intimidate with the intent to carry out on his written opinion. As evidenced in *D'Amari*, the Government must still prove that it was Mr. Turner's intent to intimidate, obstruct, interfere, or retaliate against Bauer, Posner, and Easterbrook. *Id.* The difference between intent to carry out the threat and intent to possess the requisite mens rea pursuant to the statute cannot be merged. Referring back to the public authority argument, to prevent Mr. Turner from presenting to the jury what he learned during his time as a confidential informant denies Mr. Turner the ability to provide evidence of his state of mind and would be plain error.

## III.   THE GOVERNMENT MUST PROVIDE EVIDENCE OF THE JUDGE'S REACTIONS.

As evidenced in *D'Amario*, the Government is required to provide proof of the judges' reactions. Assuming that the Court applies the reasonable person test as outlined in the defense's motion to dismiss, the Government must still prove that the opinion of Mr. Turner caused a reaction.

## IV.   JURY NULLIFICATION

Defense counsel for Mr. Turner is well aware of the letter of the law and jury nullification. To preclude certain aspects of the Government's arguments deprives Mr. Turner of his ability to provide a viable defense.

### A.      FREEDOM OF SPEECH AS A DEFENSE

As a matter of law the Court has determined that the First Amendment does not protect Mr. Turner.  With all due respect to the Court's memorandum opinion, which does not necessarily address all aspects of defense counsel's arguments presented about the subjective versus objective standards used to analyze true threats, to deprive Mr. Turner of his ability and right to argue the First Amendment and the formation of his intent based upon the First Amendment and its progeny of cases is a serious violation of the Constitution, his right to present a defense and his rights as a defendant.

In order for the jury to understand the law regarding this case, it must deal with the First Amendment.  As one of the elements of this crime is whether Mr. Turner had the intent to threaten the judges when the alleged statements were made.  Mr. Turner's view of his First Amendment rights go directly to his intent in making these statements.  In this area the Supreme Courts Opinion in *Watts* is instructive "A statute such as this one, which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind.  What is a threat must be distinguished from what is constitutionally protected speech." *Watts v. United States*, 394 U.S. 705, 707 (1969). In order for the jury to apply the facts in this case they must follow the Supreme Court's mandate in *Watts* that the First Amendment be kept clearly in mind, counsel should be allowed to argue that the statements of Mr. Turner are protected by the First Amendment.

A comparison between the instant case and *Watts* is helpful here. Watts' statements were made to small group of people in front of the White House. Here, Mr. Turner's alleged statements were made by mass media to the few people who read his

11

blog. If the government is going to start prosecuting people for what they post on the internet, the First Amendment must be a valid defense. Watt's was standing outside of the White House allegedly threatening the President and he was able to make a First Amendment argument. Mr. Turner was sitting at a computer, hundreds of miles away from his supposed victims.

Furthermore, the judges opinion states in relevant part that the court finds, **as a matter of law**, that the First Amendment does not protect Defendant from prosecution under the specific facts presented in this case. This statement denies the Motion to Dismiss on First Amendment grounds; however, it does not prevent defense counsel from arguing to the jury that Mr. Turner was exercising his First Amendment rights . Regardless of whether the Court has determined the issue as a matter of law, Mr. Turner is entitled to present to the jury questions of fact as to his understanding of the law as he was instructed by the FBI. It is unquestionable that it goes directly to Mr. Turner's requisite mental state when he wrote his opinions.

### B.    OUTRAGEOUS GOVERNMENT CONDUCT

The defense concedes that the issue of government misconduct is a matter of law for determination by the court, not the jury. *United States v. Nunez-Rios*, 622 F.2d 1093 (2d Cir. 1980). The proof of the government's selective prosecution in this matter, though, is quite irrefutable.

First, Mr. Turner has made numerous statements regarding other federal judges.[3] He has never been prosecuted, either while an FBI informant or not, until the subject criminal complaint. On February 28, 2005, the husband and mother of Judge Lekfow

---

[3] Exhibit H, which provides an incomplete breakdown of threats made to other judges over the course of Mr. Turner's career as a shock jock reveal innumerable similar states and not one arrest.

were murdered at her home.  This Court, knowing full well the ramifications that the incident had left on the minds of potential jurors, granted defense counsel's motion to transfer venue.  But this decision also touches upon an issue which may not be known to the court: that Mr. Turner was questioned about the murders after he had posted those comments and was **actually instructed** by his handlers to turn up the rhetoric in order to increase his credibility as a right wing radical.

Mr. Turner was never prosecuted as his comments were protected free speech. The FBI file reveals that on numerous other occasions Mr. Turner's file was presented to other AUSAs in Boston, New Jersey and Florida, who all decided that they could not prosecute as the speech was protected and there were no threats.  **Exhibit H,** Government's Discovery, Bates No.: 1198-1217.  In fact, as evidenced by Exhibit H, Mr. Turner has made similar comments about judges and other individuals on 70 occasions and has never been prosecuted or arrested.  *See* Bates No.: 1205. The Government's argument also paints too broadly over the issue by requesting that the court bar all evidence of government conduct.  As pointed out in *United States v. Finley*, 708 F. Supp. 906, 913-914 (N.D. Ill. 1989):

> To preclude any argument or evidence "impugning the nature of the government's investigation" could be construed as prohibiting routine defense arguments that, for example, if the defendants really were guilty, the government would have been able to find more or better evidence. Thus the government's motion is granted to the extent that it seeks to preclude defendants from arguing or presenting evidence which is not relevant to defendants' guilt but is designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation. Such an argument may be made only within the bounds of the entrapment defense considered in the following section.

In the instant matter the jury should be given the opportunity to understand Mr. Turner's role since he first started working for the FBI, which was actually 1993. *See* **Exhibit I**, Bates No: 771. On July 31st, 2009, this office provided AUSAs in Chicago with its Rule 16 demand, requesting that the United States:

2. Disclose to defendant and make available for inspection, copying or photographing, all of the following:
> (i) any relevant written or recorded statement by the defendant if the statement is within the government's possession, custody, or control, and the attorney for the government knows—or through due diligence could know--that the statement exists;
> (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and

As pointed out previously in **Exhibit G, H & I,** many parts of Mr. Turner's file are absent, missing, etc. If there were 70 cases opened about Mr. Turner why are they not provided? If Mr. Turner has been providing information since 1993 why does the file start in 2003? There can be no question that the file is incomplete when examining the aforementioned Exhibits. Yet, the Government has chosen not to produce them. By not producing his entire file the Government has essentially deprived Mr. Turner of the ability to review potential evidence which is key to his defense.

### V.    DISCOVERY REQUESTS OR COMMENTS BEFORE THE JURY

Defense counsel strenuously object to this request. First, as evidenced by the FBI file provided to counsel, portions of which are attached hereto, numerous references are made to documentation and/or events which should have been included. On October 26, 2009, counsel for Mr. Turner will be providing a second request for documents based upon the unquestionable lack of a complete file. Until his complete file is turned over,

defense counsel should be given wide latitude with regard to mentioning the incompleteness of his file. For the Government to state that it is fair and sensible when they have not given the defendant everything to which he is entitled makes a mockery of the Rules.

## VI.    PENALITIES FACED BY MR. TURNER

Defense counsel have no objection to the Government's request in so far as it pertains to introducing evidence, making argument, otherwise mentioning potential penalties faced by Mr. Turner. However, making mention that Mr. Turner is indeed on trial for his life or that his freedom hangs in the balance are completely permissible. The difference lies in the explicit nature of the comments made and whether they actually mention fines, possible jail time, etc. The Supreme Court has stated that, unless a jury has  a role in sentencing jurors should be instructed not to consider a defendant's potential sentence **during deliberations**. *See Shannon v. United States*, 512 U.S. 573, 579 (1994)(emphasis added). *Shannon* holds specifically that the jurors are not to be informed of mandatory or minimum sentences, but there is no prohibition on mentioning that the defendant is subject to confinement.

The kinds of statements that the Government contends cannot be mentioned during trial and before the jury do not invite the jury to weigh the consequences of a guilty verdict as they make no mention of the specific penal consequences. The Government's relieance on *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), *United States v. Lewis*, 110 F.3d 417, 422 (7th  Cir. 1997) and *United States v. McKenzie*, 922 F.2d 1323 (7th Cir. 1991) are misplaced as the cases only stand for the proposition that the defendant may not mention actual or probable consequences based

upon the specific sentencing guidelines, but there is no absolute bar on being able to mention that the defendant is subject to punishment.

## VII.   EVIDENCE AND ARGUMENT OF APPROPRIATE LAWFUL CONDUCT

The Government wishes to preclude the defendant from ever bringing up prior FBI guided and instructed lawful conduct.  Specific examples of possible questions are offered as being unacceptable and the responses inadmissible as they are not relevant to the charged case.  Quite the contrary, they are inextricably intertwined in this case.  The Government's reliance on specific cases is again, misplaced, as evidenced below.

A defendant may not seek to establish innocence through proof of prior lawful specific acts.  *United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990).  *Scarpa*, factually speaking, does not provide a valid legal argument to support the Government's contention.  That case involved a defendant who was charged with various charges including RICO and distribution charges.  In *Scarpa* the defendant attempted to bring into evidence taped conversations of himself where he had not actually committed any crimes. The Court held that such introduction was not relevant to the matter at had as it had no bearing on the charges.  In the instant matter it is quite clear that prior lawful acts go to the requiste mental state to attempt to impede where the FBI guided Mr. Turner as to his knowledge of the law and how to avoid prosecution.

Evidence that the defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable. *See United States v. Burke*, 781 F.2d 1234, 1242 (7th Cir. 1985)(citing *United States v. Winograd*, 656 F.2d 279, 284 (7th Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982); *United States v. General Motors Corp.*, 121 F.2d 376, 405 (7th Cir.), *cert. denied*,

16

314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497 (1941). "On the other hand, the prior act may be relevant even though it is not a duplicate of the one at issue in the trial. For example, prior acts of dubious moral quality may be relevant because they show a willingness to operate outside of "ordinary" channels." *Id. see also United States v. McPartlin,* 595 F.2d 1321, 1343-44 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979), in which we sustained a judge's decision, in a bribery case, to admit evidence that the defendant earlier paid bribes in Brazil even though, defendant claimed, bribes in Brazil were not deemed illegal or immoral. Whether the prior action is laudable or unlawful should not make much difference; the question in each case is whether prior conduct makes more or less likely the existence of some fact that matters. *Id.* see also Fed.R.Evid. 401 (defining relevant evidence). It is therefore difficult to frame general statements. The pertinence of prior conduct is a question of more or less, not of yes or no. *United States v. Radseck,* 718 F.2d 233, 236 (7th Cir.1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1291, 79 L.Ed.2d 693 (1984); *United States v. O'Brien,* 618 F.2d 1234, 1238 (7th Cir.), *cert. denied,* 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980). All the more reason why we defer to the reasoned exercise of a district judge's discretion. Cf. *Metlyn Realty Corp. v. Esmark, Inc.,* 763 F.2d 826, 830-32 (7th Cir.1985); *Piper Aircraft Corp. v. Wag-Aero, Inc.,* 741 F.2d 925, 937-40 (7th Cir.1984) (concurring opinion).

In the instant matter, prior conduct, shows and proves that Mr. Turner never had any intention whatsoever of harming anyone.  This was something that was communicated often to the FBI, which they understood.  In this case, Mr. Turner's actions of lawfulness are "inextricable intertwined" to the charges (see argument below).

17

## VIII.   REFERENCE TO PREVIOUS THREATS

It is quite apparent that the government wishes to have their cake and eat it too. They request that the court include specific posts both before and after the alleged incident which lead to the indictment, but request that any and all other acts not be included.  It is evident from the Government's filings, that they do not believe Harold Turner is entitled to a fair trial, rather they ridiculously ignore the law and Constitution. These hand picked excerpts may or may not be the most vitriolic statements Mr. Turner has ever made, but to argue that these statements are somehow different than all other prior statements and are inextricably intertwined while all others are not is just baffling.

The other acts which the Government seeks to introduce as evidence at trial, which cannot be limited,  are inextricably intertwined with the charge at hand.  The Government correctly points out in its Motion to Admit that evidence of other acts are admissible without reference to *Rule 404(b)* if that evidence is inextricably intertwined with the evidence of the charged offense or is necessary to complete the story of the charged offense.  Government Motion to Admit, p. 11.  The Government is also correct in asserting that Exhibits A ("What the abortion shooter did wrong; not the shooting, learn how not to get caught"), B ("Another Abortion Target Volunteers"), and C ("State Restricts Catholics from Politics") create the context in which the evidence relating to Defendant Turner's current charge should be examined.

What the Government fails to address is that Mr. Turner's discussions and rants in Exhibits A, B, and C are merely an expression of his political beliefs that make use of political hyperbole.  The Government contends that a reasonable reader would want to use Exhibits A, B, and C to determine if the alleged threats made against Judges

Easterbrook, Posner, and Bauer in Defendant's June 2, 2009 blog post were serious threats of injury or merely hyperbole.   Government Motion to Admit, p. 12.   They concede the state of mind of Mr. Turner is relevant, but only those hand picked posts are relevant?   The argument is laughable.   Here, the Government has misapplied what inextricably intertwined actually means and has, instead, merely attempted to introduce portions of 404(b) evidence.   Some of the cases cited by the Government are indeed helpful in demonstrating what is and what is not inextricably intertwined evidence.

In *Watts v. United States*, 394 U.S. 705 (1969), the defendant spoke out against the President's continued use of the draft.   At a rally filled with people of similar viewpoints, some of whom may very well have been of the persuasion to take action, the defendant stated:

> They always holler at us to get an education.  And now I have already received my draft classification as 1-A and I have got to report for my physical this Monday coming.  I am not going.  If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.

394 U.S. at 706.   The Defendant's stated reason for making this comment was that the government was not going to make him "kill [his] black brothers."   *Id.*   The charging statute provides in relevant part:

> Whoever... knowingly and willfully otherwise makes any such threat against the President, President elect, Vice President or other officer next in the order of succession to the office of President, or Vice President-elect, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

*18 U.S.C. 871(a)*.   The Defendant characterized this speech not as a true threat but rather as "a kind of very crude offensive method of stating a political opposition to the President."   394 U.S. at 707.   The court noted that it must interpret the threat portion of

the statute taking in mind the intent of Congress in drafting the statute and keeping in mind a commitment to the "uninhibited, robust, and wide open" public discussion of government and public officials. *Id.* The court held that, taken in context and using the reaction of the crowd to which the statement was made, the statement was not a true threat under the statute. *Id.* at 708.

Similarly, in the case at hand, Defendant Turner has posted his outrage at the actions of different members of the United States government for the public to read. Defendant Turner's rants are not true threats which a reasonable person would understand as such, but rather, merely political hyperbole meant to startle readers. For example, in Defendant Turner's commentary included in Exhibit C of the Government's motion to admit, he states that:

> The state pushed; it is about to get pushed back. Elected and other government officials sometimes need to be put in their place. They serve; they do not rule. They need to learn their place or be put there by force.

Exhibit C, p. 5. While the Government may choose to view statements such as these as evidence which is in the proper context for viewing Defendant's actions as threats, the court in *Watts* would view them as something else.

The court in *Watts* stated very clearly that the language the defendant used in that case ("If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.") was "expressly made conditional upon an event -- induction into the Armed Forces – which petitioner vowed would never occur…" 394 U.S. at 707. Similarly, in the case at hand, Defendant Turner's call to action is made expressly conditioned on elected officials realizing that they are servants, not rulers of the people that elected them. Statements such as these are not threats by any means and, therefore, cannot be construed

as putting Defendant Turner's charged offense in context or as being evidence inextricably intertwined with the charged offense.

Additionally, in its attempt to show that Defendant Turner's prior acts were inextricably intertwined and therefore admissible at trial, the Government cites to *United States v. Lahey*, 55 F.3d 1289 (7th Cir. 1995). The government's use of *Lahey*, actually on point, though perverted in their Motion to Admit.

In *Lahey* the defendant was undergoing an audit by the IRS. After concealing and purposely destroying some pertinent records, the government formally charged the defendant with several counts of filing false tax returns, corruptly obstructing the due administration of the internal revenue laws, and other related charges. 55 F.3d at 1292. Count Six charged defendant with "conspiring to obstruct the due administration of justice" by agreeing with another person to provide false testimony at trial. *Id.* On appeal, the defendant argued that using evidence that the defendant destroyed records or invented sources of nontaxable income was inadmissible as evidence of prior acts. *Id.* at 1295.

In this case, the court held that the evidence defendant sought to have excluded was properly admitted at trial because it was "not considered 'other crimes' evidence under Rule 404(b)" because it was "inextricably intertwined with the evidence regarding the charged offense," and was "necessary to complete the story of the crime." *Id.* More specifically, the court stated that:

> [t]he conspiracy between Lahey and Currens to provide false testimony to the grand jury was the culmination of Lahey's continuous efforts to conceal the gross receipts from his law practice from 1986 through 1988 from the IRS and the grand jury.

*Id.* at 1295.   The court in *Lahey* considered the defendant's prior acts to be the culmination of his continued efforts to conceal his fraudulent activities and therefore admissible not as prior acts but, rather, as acts inextricably intertwined with the charged offense.  The case at present could not be more different.

In this case, Defendant Turner's actions and language that comprise his prior acts were unquestionably the culmination of a series of acts all of which were sanctioned and taught to him by the FBI.  Though he may have been 'admonished', the information he provided which is unique and proven to be invaluable furthered his belief that he was acting lawfully.   Mr. Turner's prior acts or other acts for which they seek admission would only serve to paint the defendant in the light most favorable for the Government's case, which is exactly what *Rule 404(b)* is designed to prevent.

Indeed, in the Government's own Motion to Admit, it refers to posts made before and after the blog post at issue in an attempt to show Defendant Turner's use of threats with the intent "to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties."  *18 U.S.C § 115(a)(1)(B)*.  It is impossible to comprehend how other posts made after the alleged threat could possibly be inextricably intertwined, when all prior similar acts which are just as vitriolic are not.  It is the definition of illogical to allow one and not the other.

In attempting to prove that Turner's other acts are inextricably intertwined with the charged conduct, the Government also utilizes *United States v. King*, 126 F.3d 987 (7th Cir. 1997).  In *King*, the government charged the defendant with five counts of attempting to evade the assessment of income tax during the calendar years 1989 through 1993.  126 F.3d at 989.  During the trial of the matter, the government argued to the jury

that the defendant failed to pay his taxes on several occasions. *Id*. at 994. The defendant argued on appeal that such an argument made use of inadmissible evidence of prior acts because it referenced a separate crime: evasion of the payment of taxes. *Id*. The court held otherwise.

Similar to *Lahey*, the court in *King* held that other acts that were inextricably intertwined, thereby avoiding *Rule 404(b)*. The court held as such because it felt the other acts were those that built upon or completed the offense charged. With reference to the defendant being charged with attempting to evade the assessment of income tax and the government's use of acts to show an attempt to avoid payment, the court in *King* states that "[i]t would be a rare case in which evasion of assessment was an end in itself. Almost always, one who attempts to evade assessment ultimately wants to evade payment." 126 F.3d at 995. Furthermore, the court held that the defendant's affirmative acts in avoiding assessment of taxes were directly linked to his avoidance of paying taxes and those acts, therefore, were inextricably linked.

Based upon the forgoing, it would be reversible error to only admit the items hand chosen by the Government. Rather the only logical and appropriate ruling is to allow the Government and Defense to present all "inextricably intertwined" evidence, including but not limited to the Defendants teachings from the FBI, his conduct as an informant and all of his prior post. If this court should find that the evidence of Defendant Turner's other acts are admissible in evidence, then the door would be wide open to introducing evidence that Defendant Turner was a paid informant for the Federal Bureau of Investigation, that they taught him what he could and could not say and what was "out of bounds".

23

. *Id.*

### IX.    MURDER OF JUDGE LEFKOW'S MOTHER AND HUSBAND

At this point defense counsel has not had an opportunity to confer with counsel for the Government, but does not quite understand the request in this part of the motion. Surely, the court may take judicial notice of same.  Defense counsel fail to see why witnesses would need to be called.


Respectfully submitted on this 25th day of October, 2009.


/S/ MICHAEL OROZCO____          /S/ NISHAY SANAN__
Michael Orozco                  Nishay K. Sanan, Esq.
Bailey & Orozco, LLC            327. S. Plymouth Court
744 Broad Street                Suite 201
Suite 1901                      Chicago, IL 60604
Newark, NJ 07102                312-692-0360
Phone: (973) 735 2683

# ALL EXHIBITS FILED UNDER SEAL