UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 650 |
| vs. | ) | Judge Donald E. Walter |
| | ) | |
| HAROLD TURNER | ) | |

**Government's Consolidated Reply In Support of Its Motions *In Limine* and To Admit Certain Evidence Under Rule 404(b)**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits the following reply in support of its motions *in limine* and for the admission of certain evidence pursuant to Rule 404(b).

**Motions *in Limine***

**I.     Forms of Argument or Evidence Related to Public Authority or Assistance to the Government**

It is undisputed that in order to establish a *prima facie* case for public authority, a defendant must: (1) put forward affirmative representations by a government official that the charged conduct was legal, and (2) establish that reliance on such representations was objectively reasonable. In an attempt to satisfy this burden, defendant presents five exhibits. None of these exhibits comes close to establishing a *prima facie* case that defendant was granted authorization to threaten public officials. In this regard, it is worth examining each of these exhibits in turn.[1]

---

[1] Defendant claims the government has not provided documents relevant to its public authority defense. The government expects any discovery issues to be resolved shortly. Of course, if new materials exist and provide defendant a good faith basis for renewing his motion to assert a public authority defense, the government has no opposition to the renewal of such a motion.

First, defendant presents a document from March 2006 referring to a warning defendant received from Special Agent Haug and the agent's conclusion that defendant's value as a source outweighs "the discomfort associated with the source's rhetoric." (Exhibit A):

> Source was advised of a recent trial in Trenton, New Jersey involving animal rights activists who belong the to the group Stop Huntington Animal Cruelty (SHAC). Source was advised that the corporation, SHAC, was found to be responsible for the actions of individuals who acted as a result of things posted on their website.
>
> * * *
>
> Newark believes, in balance, this source's value outweighs the discomfort associated with source's rhetoric. Source's unique access provides important intelligence which, if lost, would be irreplaceable.

Second, defendant offers a document concerning an admonishment Agent Haug issued to defendant received on July 13, 2007, regarding a white supremacist rally defendant planned for Kalamazoo, Michigan (Exhibit B):

> Source was advised in the strongest terms possible that if any criminal act can be directly linked to his/her actions at the pending rally in Kalamazoo, that the writer would immediately confer with the United States Attorney's Officer regarding criminal proceedings. Source advised that he/she understood.
>
> Source will continued to be admonished, in the strongest terms possible, and on a periodic basis, about his rhetoric and the potential of it inciting acts of violence, despite the original intention of the rhetoric. Specific rhetoric which could potentially incite violence, will be addressed with the source as it occurs, reminding the source of the danger such rhetoric poses. Such will be instructed to utilize his celebrity status to insure he continues to remind those who follow his rhetoric, that such rhetoric is not intended to incite violence and that violence is not an acceptable method of addressing the particular issue addressed by the rhetoric.

Third, defendant refers to previous threats in Exhibits C and D, which never led to prosecution. *See* Exhibit C, "New Jersey justices under guard after threat"

(describing defendant's alleged threat of New Jersey Supreme Court Justices), and Exhibit D (describing defendant's removal from his website of the names and addresses of 3rd Circuit appellate judges following the murder of Judge Lefkow's family in Chicago in February 2005).

Finally, defendant refers to a report in February 13, 2008, in which defendant provided information to the FBI but "was reminded by [an FBI agent] that [defendant] is still closed and that there is no formal relationship between the [defendant]] and the FBI." *See* Exhibit E.

These exhibits fall well short of establishing a *prima facie* case for public authority for several reasons. First, none of these documents suggests that defendant received *affirmative* representations from the FBI that it was legal for him to threaten public officials. The requirement of affirmative (rather than passive) authorization is well-settled in the case law.[2]

---

[2]*See, e.g.*, *United States v. Pardue*, 385 F.3d 101, 108-09 (1st Cir. 2004) (requiring that defendant "put forth an affirmative representation by a government official that his conduct was or would be legal."); *United States v. Nichols*, 21 F.3d 1016, 1018 (10th Cir. 1994) (holding entrapment by estoppel inappropriate because no allegation of affirmative representation or "active misleading" by government agent); *United States v. Corso*, 20 F.3d 521, 528-29 (2d Cir. 1994) (refusing to apply defense because there was no communication from an authorized government official to the defendant that his acquisition of illegal receivers was lawful); *United States v. Weitzenhoff*, 1 F.3d 1523, 1534-35 (9th Cir. 1993) (refusing to apply defense because appellants could not point to a false statement by government official upon which they relied); *United States v. Bazargan*, 992 F.2d 844, 849 (8th Cir.1993) (ruling that the defense has no application because INS did not misrepresent information); *United States v. Clark*, 986 F.2d 65, 69-70 (4th Cir.1993) (holding that defense fails because defendant presented no evidence of reasonable reliance on misleading statements by government official); *See United States v. Spires*, 79 F.3d 464, 466 (5th Cir. 1996) ("The defense of entrapment by estoppel is applicable when

3

Far from affirmative authorization, these documents (and dozens of others) confirm the opposite – that defendant was warned and admonished "about his rhetoric and the potential of it inciting acts of violence." *See* Exhibit B. Moreover, the fact that defendant was never prosecuted is hardly an affirmative representation from the government that he may threaten public officials with impunity. It would be foolish for a criminal to assume that a prosecutor's decision not to file charges means he committed no crime. Many factors having nothing to do with the factual guilt or innocence of a prospective defendant play into a prosecutor's decision whether to file charges, none of which are relevant or admissible in this (or any other) case. So even if defendant manages to establish a *prima facie* case for public authority, it remains indisputable that his *non-prosecution* for unrelated conduct should not be a part of the defense. To inquire into why the various prosecutors in other jurisdictions declined to prosecute defendant would be to invite an irrelevant and protracted sideshow, and one that has no precedent.

The second reason these documents fail to establish a *prima facie* case for a public authority defense is that defendant cannot plausibly demonstrate he *reasonably* relied on an alleged authorization to threaten Judges Easterbrook, Posner, and Bauer, a clear requirement for the public authority defense.[3] To understand why, one need

---

a government official or agent actively assures a defendant that certain conduct is legal and the defendant reasonably relies on that advice and continues or initiates the conduct").

[3]*United States v. Neville*, 82 F.3d 750, 762 (7th Cir. 1996) (affirming preclusion of defense and noting that the "reasonableness" required under the belief

4

only consider the scope of defendant's proposed authorization. Defendant claims instructions he allegedly orally received years ago continued to authorize him on June 2 and 3, 2009, to threaten the judges, long after he had been terminated as source for the FBI. Presumably, then, defendant's alleged authorization to threaten public officials has no expiration, for he has proposed no time limit (he claims his being cut off as a confidential source does not suffice). Nor does there appear to be a limit on the type of people he was "authorized" to terrorize.

It bears emphasis that the reasonableness required under the public authority defense is *objective*, calling for the answer to a simple question: would a reasonable person believe he had been given unlimited authorization to threaten public officials based on the five exhibits presented to the Court? To ask the question is to answer it: one cannot reasonably rely on a perceived open-ended license to commit crimes. *See Abcasis*, 45 F.3d 39 at 43-44 ("The defendant's conduct must remain within the general scope of the solicitation or assurance of authorization; this defense will not support a claim of an open-ended license to commit crimes"); *see also United States v. Patient Transfer Serv., Inc.*, 413 F.3d 734, 742-43 (8th Cir. 2005); *United States v. West Indies Transp., Inc.*, 127 F.3d 299, 313 (3d Cir. 1997).

---

prong of a government authority defense "is objective"); *United States v. Achter*, 52 F.3d 753, (8th Cir. 1995) (affirming preclusion of "public authority" or "entrapment by estoppel" defenses and noting that "[b]oth public authority and entrapment by estoppel require a defendant to establish that he reasonably relied on the representations of a government official").

The requirement that defendant's reliance be objectively reasonable dovetails into the final reason defendant has not made and cannot make a *prima facie* case. To invoke the public authority defense, the defendant must show "a person sincerely desirous of obeying the law would have accepted the information as true." *United States v. George*, 386 F.3d 383, 399 (2d Cir. 2004); *Giffen*, 473 F.3d at 43 (rejecting notion that estoppel defense would "grant any criminal carte blanche to violate the law should he subjectively decide that he serves the government's interests thereby"). If defendant had a genuine desire to obey the law, he would have sought advice from the appropriate authorities as to what he was permitted to say. Instead, defendant opted to keep pushing the limit, or as he put it, "ratchet-up the pressure until it gets so bad, incites and foments so much 'activity' either the government or the bureau relents." These are not the words of one who is attempting to obey the law.

For all these reasons, any defense or evidence relating to "public authority" should be excluded, including any reference to defendant's service as a confidential source for the FBI as it bears on defendant's intent.[4]

## II.  Reference to Whether Defendant Intended to Carry Out the Threat or Harm the Judges

It is unclear whether any disagreement exists between the government and defendant on this issue. As stated in its motion *in limine*, the government is well aware

---

[4]The government reiterates that if defendant is allowed to proceed with a public-authority defense, the government seeks an *in limine* ruling that Federal Rule of Evidence 404(b) and 801(d)(2)(E) allow the admission of any evidence tending to rebut such a defense.

6

that section 115(a)(1)(B) is a specific intent crime, obliging the government to establish that defendant threatened with intent to impede, intimidate, interfere, or retaliate against Judges Easterbrook, Posner, and Bauer on account of the performance of their official duties.

The government's motion *in limine* is more limited – it seeks to exclude evidence concerning whether defendant intended to carry out the threat or harm the judges, which is irrelevant under the law, a proposition defendant apparently agrees with. ("The defense concedes that the letter of the law is irrefutable in that the government need not prove that Mr. Turner intended to carry out any alleged threat" Doc. #9 at 10). Accordingly, the government respectfully moves *in limine* to preclude defendant from arguing or otherwise presenting evidence regarding whether defendant intended to carry out the threat of harm the judges.

### III.   Reference to Whether The Alleged Threat Was Communicated to The Judges

The test for whether a statement constitutes a threat is an objective one: whether a *reasonable person* would take the words as a threat of violence, *United States v. Parr*, 545 F.3d 491 (7th Cir. 2008); *United States v. Fuller*, 387 F.3d 643 (7th Cir. 2004); *United States v. Saunders,* 166 F.3d 907 (7th Cir. 1999); even defendant embraced this rule in his unsuccessful motion to dismiss on First Amendment grounds. *See* Doc. #24 at 12. Because the test is objective, no court has ever required the government to establish the victims' reaction to the threats. That much should be obvious since the victims need not even *receive* a threat for it to be actionable. *See*

7

*United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008); *Fuller*, 387 F.3d at 647-48; *Hoffman*, 806 F.2d at 707. Defendant's claim that *United States v. D'Amario*, 330 Fed. Appx. 409 (3d Cir. 2009), holds to the contrary is meritless. The judge in *D'Amario* was *permitted* to testify (on the theory that his testimony arguably pertained to what a reasonable person would understand); it scarcely *requires* the government to present victims as witnesses. The fact is that a threat need not be communicated to its victims, so defendant should not be permitted to refer to whether the threat was communicated to Judges Easterbrook, Posner, and Bauer, nor what their reactions were, which is irrelevant.

## IV.  Forms of Argument or Evidence Designed to Elicit Jury Nullification

Although defendant purports to understand that arguments designed to elicit jury nullification are improper, his arguments belie such an understanding.

### A.  Argument or Evidence Related to the Freedom of Speech or the First Amendment

Defendant seeks to reargue an issue he already lost by attempting to confuse the jury into believing that what he wrote is First Amendment protected. The jury need only decide whether defendant's words were a threat; if they were, there is no First Amendment problem. There is no better recipe for jury confusion than for the defendant to be permitted to argue that his (demonstrably flawed) understanding of the First Amendment *should* be the law. In fact, his view of the freedom of speech is wrong, as the case law makes clear and as this Court has already ruled.

8

In another attempt to pave the way for jury confusion and nullification, defendant claims his view of the First Amendment, even if mistaken, bears on his intent. But this is a mistake of law defense, nothing more. And, as defendant sensibly concedes in his response, mistake of law is no defense. Br. at 3 ("The defense concedes that mistake of law is no defense"). Because as a matter of law this evidence cannot pertain to defendant's intent, to permit discussion of the First Amendment would essentially be an attempt to convince a jury that the law should be different – that threats of violence should be protected speech. This is a plainly impermissible argument.

The First Amendment is a legal defense already rejected by this Court. Thus, the jury should not consider this issue at all, and any argument or evidence related to the First Amendment or freedom of speech would simply confuse and mislead the jury and should be excluded.

### B. Argument or Evidence of "Outrageous Government Conduct"

Defendant acknowledges that "the issue of government misconduct is a matter of law for determination by the court, not the jury." Doc.#9 at 12. Hence, the government respectfully requests that any potential claims of government misconduct, including so-called selective prosecution, be addressed to the Court and not to the jury.

## V. Discovery Requests or Commentary Regarding Discovery in Presence of Jury

Defendant's request for documents demonstrates why he should not be permitted to make such requests in front of the jury – many of them are ill-founded.

9

The government is confident that any discovery issues will be resolved well before trial. But should a dispute arise, the matter should be addressed to the Court outside the presence of the jury. Because defendant "strenuously objects" to this modest request, the government is compelled to request *in limine* that defendant not be permitted to discuss discovery in the presence of the jury.

### VI. Penalties Faced by Defendant

Defendant agrees in part with the government's request that penalties faced by the defendant should not be mentioned in the presence of the jury. Defense counsel claim, however, that they seek to apprise the jury that defendant will be "subject to confinement." No explanation is given as to why the prospect of "confinement" – or any penalty for that matter – is relevant to whether defendant violated section 115(a)(1)(B), the issue the jury must decide. Having offered no reason for comments about penalties, the government requests that defendant be precluded from mentioning potential penalties, including the prospect of "confinement."

### VII. Evidence and Argument of Appropriate Lawful Conduct

Defendant's response on this issue begins by acknowledging the overwhelming authority holding that prior lawful behavior has no bearing on whether a defendant acted lawfully on the occasion alleged in the indictment. Yet, in the next paragraph, defendant resorts to this very reasoning. He claims his "prior conduct, shows and proves that [defendant] never had any intention whatsoever of harming anyone." Br. at 16. This reasoning, however, is doubly flawed because, as defendant previously recognized, an intent to harm Judges Easterbrook, Posner, and Bauer is not needed to

10

violate section 115(a)(1)(B); defendant need only have intended to threaten harm.

To permit defendant to present evidence of prior lawful behavior would eviscerate the carefully drafted limitations of Rule 405, which forbids proof of good character through evidence of specific acts where character is not an element of the charge or defense. *See Beno*, 324 F.2d at 584 and 587. Like Rule 403, Rule 405 is intended to prevent the series of wasteful "mini-trials" that would inevitably ensue if the defendant were allowed to pursue this irrelevant line of inquiry. The Advisory Committee Notes for Rule 405 conclude that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." *See, e.g.*, *Grimm*, 568 F.2d at 1136 (evidence of lawful transactions "could have complicated the case and confused the jury").

To the extent the defendant intends to offer evidence regarding his character, he should be permitted to do so only in accordance with the limitations of Federal Rule of Evidence 405(a). The defendant should not be allowed to introduce evidence that he engaged in lawful activity on other occasions or otherwise committed good deeds – under settled law this is not evidence that he acted lawfully in relation to the charged crimes.

## VIII. Reference to Whether Defendant Has Been Prosecuted For Previous Threats

Defendant does not respond to this argument except in the public authority section. Accordingly, for the reasons explained above, any reference to whether defendant has been prosecuted for previous threats, and argument about the

government's motivations for pursuing the instant case, should be barred.

## IX.   Notice Regarding Evidence of The Murder of Judge Lefkow's Mother and Husband

Based on defendant's response, it appears that the government and defendant may be able to reach a stipulation regarding the fact of the murder of Judge Lefkow's mother and husband. In reference to defendant's suggestion that the Court take judicial notice of the murders, the government notes that any document susceptible to judicial notice would demonstrate the fact that the murders were *reported*, not necessarily that they in fact occurred (and judicial notice in a criminal matter is anyway not conclusive, *see* Federal Rule of Evidence 201(g)). As such, without a stipulation, the government will need to rely on witness testimony. A ruling from the Court on this matter, however, does not seem unnecessary.

### Evidence Inextricably Intertwined With The Charged Offense and Admissible Under Rule 404(b)

As best as the government can discern, defendant agrees that the government's proffered evidence is inextricably intertwined to the charged offense or admissible under Rule 404(b). *See, e.g.*, ("The government is also correct in asserting that Exhibits A . . . Exhibits B . . . and Exhibits C . . . create context in which the evidence relating to [defendant's] current charge should be examined.").[5] Each of defendant's complaints

---

[5]Oddly, defendant complains that Exhibits A, B, and C are not "vitriolic" enough. As clearly explained in its motion, the government seeks to admit Exhibits A, B, and C because they are the relevant surrounding postings that a reasonable observer would have come across on June 2 and 3, as they were published directly above and below the alleged threat.

about the proffered evidence do not concern the evidence's *admissibility*, but rather deal with unrelated issues.

First, defendant claims the proffered exhibits should not be admitted because they are not *criminal* (*i.e.*, true threats), but are "merely an expression of [defendant's] political beliefs that make use of political hyperbole." Br. 18 & 22. The admissibility of inextricably intertwined and 404(b) evidence does not depend on its criminality (that is why Rule 404(b) refers to "other crimes, wrongs, *or* acts"). Indeed, the government agrees that some of the proffered evidence is not independently criminal. But that is not the point of the proffered evidence. As thoroughly explained in the government's motion, the evidence either:

(A) Gives context to defendant's alleged threat: *i.e.*, the surrounding blog postings on defendant's website (Exhibits A, B, and C); or

(B) Tends to establish defendant's motive, intent, plan, knowledge, and absence of mistake: *i.e.*, defendant's other postings on his blog (Exhibits D and E), a voicemail defendant left for an agent with the FBI (Exhibit F), a clip from defendant's radio webcast available at halturnershow.com (Exhibit G), and certain emails sent from defendant (Exhibits H, I, J, and L).

Defendant remains free to argue that the proffered evidence and the alleged threat is all "merely an expression of [defendant's] political beliefs." But this characterization of the government's evidence has nothing to do with its admissibility.

Second, defendant claims that the government's proffered evidence should only be admitted if he is permitted to put on a public authority defense. The decision on the admissibility of 404(b) evidence and on the viability of a public authority defense are not subject to barter. Whether the other proffered evidence is inextricably intertwined

13

with the charged crime or bears on defendant's motive, intent, plan, knowledge, and absence of mistake, pursuant to Rule 404(b), is wholly separate from whether the FBI authorized him to threaten the judges on June 2 and 3. Nothing about the admission of the proffered evidence "opens the door" to defendant's public authority defense. The surest sign that defendant's public authority defense does not depend on the government's proffered evidence is to look at defendant's own argument in his attempt to set forth a *prima facie* case: he mentions *none* of the proffered evidence in his argument that he was authorized by the FBI.

Moreover, there is nothing inconsistent about the government's position that defendant lacked authorization to threaten Judges Easterbrook, Posner, and Bauer and that the proffered evidence is admissible. Defendant apparently attempts to manufacture an inconsistency based on the logic that the admissibility of *any* background evidence renders *all* background evidence admissible. That logic doesn't wash because the government and defendant have different reasons for admitting background evidence. The government's seeks to admit evidence that is inextricably intertwined or admissible under Rule 404(b). Defendant's theory is different – that the FBI authorized the charged conduct. Despite his best efforts, defendant cannot shoehorn his defense of public authority into the category of inextricably intertwined evidence. The evidence of what defendant was allegedly told by the FBI is only relevant as a public authority defense, for which defendant must make a *prima facie* showing; were it otherwise, in the dozens of cases in which a public authority defense was excluded, defense counsel could have simply claimed the evidence was inextricably

intertwined, a strategy that has no precedent.

Third, and related, defendant charges that the government has "hand picked" the evidence. Defendant is correct insofar in that the government has opted against moving to admit *all* evidence that could bear on defendant's intent, motive, intent, plan, knowledge, and absence of mistake. The government selected evidence based on its relevance to the case; it has no obligation to present all evidence plausibly relevant under Rule 401. More importantly, as mentioned in its motion, the government decided against presenting much evidence because it thought the inflammatory nature of the evidence outweighed its relevance.

In the end, it is telling that the government provided a detailed theory of admissibility for each of its exhibits and defendant does not dispute any of these theories or exhibits. The only claimed problem with the government's list of proffered evidence is that the list is not long enough. Such a complaint is not about admissibility, but rather is about the conclusions that may be drawn from the evidence, which defendant is of course free to challenge. Without a complaint about the admissibility of the government's proffered evidence, the Court should admit the proffered evidence as intrinsically intertwined to the charged offense or admissible under Rule 404(b).

## Conclusion

The government respectfully requests that its motions *in limine* be granted and that the proffered evidence be admitted as intrinsically intertwined to the charged offense or under Rule 404(b).

    Respectfully submitted,

    PATRICK J. FITZGERALD
    United States Attorney

By:   *s/William E. Ridgway*
    WILLIAM E. RIDGWAY
    WILLIAM HOGAN
    Assistant U.S. Attorneys
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 469-6233

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 650 |
| vs. | ) | Judge Donald E. Walter |
| | ) | |
| HAROLD TURNER | ) | |

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

**Government's Consolidated Reply In Support of Its Motions *In Limine* and To Admit Certain Evidence Under Rule 404(b)**

was served on October 30, 2009, in accordance with FED R. CRIM. P. 49, FED. R. CIV. P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:   */s/ William Ridgway*
WILLIAM E. RIDGWAY
WILLIAM HOGAN
Assistant United States Attorneys
219 South Dearborn Street, Suite 500
Chicago, IL 60604
(312) 469-6233

17