UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 09 CR 650 |
| vs. ) | Judge Donald E. Walter |
| ) | Sitting by designation |
| HAROLD TURNER ) | |

**DEFENDANT'S SUPPLEMENTAL MOTION IN LIMINE**

NOW COMES the Defendant, HAROLD TURNER, by and through counsel, NISHAY K. SANAN and MICHAEL OROZCO, and respectfully moves this Court to enter an Order conforming with the relief requested as follows:

**I. DEFENDANT'S STATEMENT WAS PROTECTED FREE SPEECH**

Defendant repeats and incorporates all prior motions and their factual basis and analysis. This supplemental motion is based upon new evidence which was acquired less than two weeks before the start of trial. Defendant repeats that a refusal to grant a continuance violates Mr. Turner's Constitutional rights, especially in light of the fact that over 1,000 pages of additional discovery reveals further inquiries must be made. As time is of the essence in preparation for trial, defense counsel will not specifically reference each detail in the attached exhibits and provides each document as a whole in further support of the arguments below.

**A.    Defendant's Statement was an Opinion**

Turner is a legitimate member of the media, and has been for well over a decade. See **Exhibit A and B** (showing that Defendant's media status was the main benefit as a Confidential Informant and specifically that the FBI requested and obtained privileged confidential human source status for him.) The only thing that Defendant did was post

1

the names and work addresses of the judges who were the target of his politically charged opinion. The publication of information related to public figures has long been held to be protected free speech. *New York Times v. Sullivan*, 376 U.S. 254 (1964)(holding that communicating grievances, abuses, etc., regarding public officials is protected free speech); *See also N.A.A.C.P. v. Button*, 371 U.S. 415, 435, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

In fact, the FBI was aware that defendant had published, on numerous other occasions, the names and home addresses of public officials but was never charged. **Exhibit C.** By virtue of *Sullivan*, public officials must endure a far higher level of criticism, controversy, and public scrutiny than the average public citizen. Indeed, Defendant's prior posts of judges' work addresses has been deemed by the Department of Justice insufficient to warrant prosecution. As recently as March of 2009, the United States Marshals Service reported that Mr. Turner had a long history of posting such comments, was not a threat, and did not violate any laws (which would obviously include a violation of the current statute 18 USC 115(a)(1). **Exhibit D.**

Even more troubling is that Mr. Turner's politically charged rhetoric in this instant matter is identical to previous statements. **Exhibit E.** In this exhibit Mr. Turner opined that several United States Senators "deserve to be killed, assassinated!" One of those Senators was Senator Dick Durbin, from the State of Illinois. This opinion, written sometime in October 2007, was never prosecuted. Since Defendant was, at that time, no longer operating as a confidential informant he could not have received any protection from his handlers or prosecution. Clearly, the only reason that Illinois would chose not to prosecute is because the statements are unquestionably protected by the First Amendment

of the Constitution, and Mr. Turner in no way made any statements which would or could have been perceived or interpreted as anything other than an opinion. Again, this clearly evidences that everything Mr. Turner said which is identical and/or similar to the current charge was protected free speech, and this matter must be dismissed as violative of defendant's First Amendment rights as it comes from the same jurisdiction which seeks to convict him now.

### B. When Analyzing the June 2nd Posting it is Clear there is No Threat.

Defense counsel would argue that the only issue in the present case as to whether there was a threat revolves around the statement on June 2nd "These judges deserve to be killed." This statement clearly lacks any direct or indirect threat to inflict injury or to actually threaten. Deserve, as defined by Webster's Dictionary, means "to earn by reason of untoward performance" and "to be able to claim rightfully by virtue of actions done or qualities displayed." Defendant opined, nothing more, that the decision in the NRA v. Chicago by Judges Posner, Easterbrook, and Bauer made them worthy of being killed, not that someone should actually carry out an act of physical violence which would lend itself to possibly being a true threat.

The meaning of the word deserve does not change based upon whether the purported recipient is receiving praise or scorn. The government contends that "deserve" is a statement of intent while common sense and common language, especially when viewed with the entire blog posts of June 2nd and June 3rd, make clear that it is nothing more than an opinion.

What is even more troubling for this case is that defendant has made numerous other statements about other judges and has never been prosecuted. In 2002, shortly after

being approached by the FBI, Mr. Turner opined that a ruling by Judge Lefkow in Chicago made her "worthy of death." That matter was never prosecuted. During an interview with Geraldo Rivera in 2005 on Fox News, Defendant stated, again, on the air that the ruling by Judge Lefkow made her "worthy of death." This nationally broadcasted interview did not result in any prosecution of the defendant. Similar statements were made, again, on the air on Dateline NBC, another nationally broadcasted show. **Exhibit F**. Rather, the FBI praised Turner's actions because it allowed him to "solicit others in the movement during the investigation of the murder of Judge Lefkow's family in Chicago as to whether anyone was claiming responsibility." **Exhibit G**. Both of the aforementioned politically charged statements revolved around a Chicago federal judge. The prosecution is now arguing that "deserve to be killed" is somehow different than "worthy of death." 18 USC Section 115 has not changed much since it was enacted, and if an utterance in 2002 was not a crime, if it was not a crime in 2005, than an almost identical utterance by the same person regarding a different judge in the same jurisdiction is also protected free speech and cannot be prosecuted. Prior exhibits prove this.

It was defendant's knowledge of the law and what was applicable First Amendment free speech that also led to refusals to prosecute. His tutelage under the FBI and their constant involvement by contacting other offices and agencies about how defendant was not a threat also lends credence to the fact that there is no way, given his history, that Mr. Turner's statements could be considered a true threat. **Exhibit H**. In fact, any argument that Mr. Turner's listeners and followers were some sort of violent group ready to act is dissuaded by **Exhibit I**.

4

Defendant's activities were so secret that not even his family knew about them. He was instructed never to reveal his status to anyone. As a result, numerous agencies as contained in the attached exhibits opened investigations into his rhetoric but none ever prosecuted. In many of those instances, these decisions not to prosecute were made without the knowledge that he was an FBI informant who had been trained in how to properly exercise his First Amendment right. In fact, his information was so invaluable, as late as November 2007, Defendant was considered a "critical step in the prevention of domestic terrorism and lone wolf actions inside the United States." **Exhibit J.**

## II. OUTRAGEOUS GOVERNMENT CONDUCT

Coupled with the above, the following facts set forth that the arrest, detention, and continued prosecution of Mr. Turner amounts to outrageous government conduct.

### A. There was insufficient probable cause to arrest

When Mr. Turner was interviewed on June 24th, 2009, by the FBI who were executing a search warrant on his home regarding the postings of June 2nd and June 3rd, he stated that he never intended to harm the judges. Despite a lack of probable cause and no evidence whatsoever after the search of his residence, he was placed under arrest only AFTER FBI agents had conferred with the United States Attorney's Office in Chicago. **Exhibit K.** Such arrest was a violation of Mr. Turner's right to due process under the 14th Amendment. What is even more outrageous the evidence presented to the Grand Jury seriously lacks any indicia that a "true threat" was made or that probable cause existed. **Exhibit L.**

### B. Defendant was literally shopped around to numerous jurisdictions

5

The recent evidence provided by the Government reveals that Mr. Turner's statements, though protected free speech, were constantly shopped around different jurisdictions and different United States Attorney's Offices (which is no different than forum shopping in a civil matter which is prohibited). **Exhibit M**. Numerous United States Marshals reports reveal that case after case was closed as Mr. Turner was not deemed a threat, that his rhetoric though violent did not violate any laws, and that his politically charged statements were protected. *See United States v. Wharton*, 520 F.3d 1173 (10th Cir. 2008)(holding that outrageous government conduct must be viewed using a totality of the circumstances analysis).

Despite the fact that no other jurisdiction would touch Mr. Turner's statements and opinions, he was still charged in Chicago for the exact same comments made in the past. He was deemed to be a threat to the government, placed in isolation, only allowed to contact his attorneys twice a week and his family once a month by telephone, had the crowns on his teeth removed because they were deemed to be a weapon (the idea of which is so ridiculous it is baffling), non stop harassment during his incarceration in Chicago, and a blatant disregard for the truth about his training under the FBI and the fact that his statement was an opinion all amount to unconscionable and outrageous government conduct.

His isolation severely hampered counsel's ability to properly argue the motion to dismiss. Moreover, the United States Attorney's Office late discovery has not allowed defense counsel to properly argue before the court regarding Mr. Turner's First Amendment rights or properly prepare for trial. In fact, as seen in **Exhibit N** the Government was attempting to pin Mr. Turner with any garbage charge that would stick

6

to a wall, including asking other federal agents to contact the IRS to trump up charges of tax evasion or any other specious claim they could muster.

Mr. Turner's possible prosecution in New Jersey was met with a Blanket Letter of Declination which has yet to be produced by the Government. That letter would clearly indicate that due to his training and the assistance of the United States Attorneys Office the Government is precluded from the possibility of any criminal actions being brought in New Jersey. Even more astonishing is that this statement was conveyed to two different parties by the same person as evidenced by the two separate correspondences attached hereto as **Exhibit O.** This proves, by way of evidence, that New Jersey would not prosecute even though they would have had jurisdictional first dibs on prosecuting Mr. Turner. They chose not to exercise that right because they knew he was acting under Public Authority and, moreover, it was protected free speech.

### Conclusion

For all of the foregoing reasons we ask that the indictment in this matter be dismissed.

Respectfully submitted on this 27th day of November, 2009.

/S/ MICHAEL OROZCO
Michael Orozco
Bailey & Orozco, LLC
744 Broad Street
Suite 1901
Newark, NJ 07102
Phone: (973) 735 2683

/S/ NISHAY SANAN
Nishay K. Sanan, Esq.
327. S. Plymouth Court
Suite 201
Chicago, IL 60604
312-692-0360

7