UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 650 |
| vs. | ) | Judge Donald E. Walter |
| | ) | Sitting by designation |
| HAROLD TURNER | ) | |

## **MEMORANDUM IN SUPPORT OF DEFENDANT'S RULE 29 MOTION**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.....................................................................2

ARGUMENT

    I.    The Government Failed To Prove That Defendant Turner's Statements and Blog Posts Were True Threats and Protected Speech...............................................................7

    II.    The Government Did Not Present Sufficient Evidence That Turner Threatened Judges for a Jury To Find Guilt Beyond A Reasonable Doubt.............................................. 12

    II.    The Government Did Not Present Sufficient Evidence That Turner Had the Requisite Intent To Impede Or Intimidate The Judges At Issue.............................................. 17

CONCLUSION ..................................................................... 19

## TABLE OF AUTHORITIES

*Jackson v. Virginia,* 443 U.S. 307, 319 (1979) ...................................... 5

*United States v. Brown,* 776 F.2d 397, 403 (2d. Cir. 1985) ................... 5

*United States v. D'Amato,* 39 F.3d 1249, 1256 (2d. Cir. 1994) ............. 5

*United States v. Davila,* 461 F.3d 298 (2d. Cir. 2006) ........................... 14

*United States v. Guadagna,* 183 F.3d 122, 129 (2d. Cir. 1999) ............. 5

*United States v. Kelner,* 534 F.2d 1020 (2d Cir. 1976) .......................... 15

*United States v. Libera,* 989 F.2d 596, 601 (2d Cir. 1993) ................... 5

*United States v. Macklin,* 671 F.2d 60, 65 (2d Cir. 1982) .................... 6

*United States v. Maisonet,* 484 F.2d 1356, 1358 (4th Cir. 1973) ........... 14

*United States v. Mulheren,* 938 F.2d 364, 372 (2d. Cir. 1991) .............. 6

*United States v. Malik,* 16 F.3d 45 (2d. Cir. 1994) ................................ 13, 15

*United States v. Martin,* 163 F.3d 1212 (10th Cir. 1998) ...................... 10-12

*United States v. Mankani,* 738 F.2d 538, 546 (2d. Cir. 1984) .............. 5

*United States v. Orozco-Santillan,* 903 F.2d 1262, 1265 (9th Cir. 1990) 18

*United States v. Stevenson,* 126 F.3d 662 (5th Cir. 1997) .................... 15, 16, 18

*United States v. Wiley,* 846 F.2d 150, 155 (2d. Cir. 1988) ................... 6

*Watts v. United States,* 394 U.S. 705 (1969) ........................................ 8, 9

**STATUTES**

18 U.S.C. § 115(a)(1)(B) ........................................................ *passim*

18 U.S.C. § 871(a) ............................................................... 8

18 U.S.C. § 876 .................................................................. 14

18 U.S.C. § 2332(a) ............................................................. 14

NOW COMES the defendant, HAROLD TURNER, by and through counsel, NISHAY K. SANAN and MICHAEL OROZCO, and respectfully moves this Honorable Court to grant the Rule 29 Motion made at the close of Defendant Turner's case, and in support submit this memorandum:

## BACKGROUND

At the close of the evidence in this case, Defendant Turner moved for a judgment of acquittal as to the single count indictment, pursuant to Federal Rule of Criminal Procedure 29.  At that time, this court took the Rule 29 Motion under advisement pursuant to *Rule 29(b)*.  On December 7, 2009 this Court granted Defendant Turner a mistrial at which point this Court discharged the jury.  Defendant Turner filed a Motion to Renew the Rule 29 challenge on or about December 10, 2009 and now files this memorandum in support of his *Rule 29* Motion.

## ARGUMENT

*Federal Rule of Criminal Procedure 29* allows for a judgment of acquittal and provides the court with the standard for such a ruling.  *Rule 29(a)* provides as follows:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

*F. R. Crim P. 29.*  The Rule also provides in subsection (b) for the court to reserve its ruling on such a motion for judgment of acquittal and subsection (c) provides for the court to consider such a motion after discharge of the jury.

When considering a *Rule 29* motion, pursuant to subsection (c), for judgment of acquittal, the court must view the evidence presented during trial in the light most favorable to the government.  *United States v. Guadagna*, 183 F.3d 122, 129 (2d. Cir. 1999); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  When deciding whether to grant a motion for judgment of acquittal the court must be careful not to usurp the role of the jury as the finder of fact.  *Id.*  While respecting the role of the jury, the court must decide whether a reasonable trier of fact could have convicted the defendant.  *United States v. Mankani*, 738 F.2d 538, 546 (2d. Cir. 1984).

In evaluating the evidence put forth at trial, the court should evaluate the evidence in its total rather than individually to determine the sufficiency of the evidence.  *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d. Cir. 1994); *United States v. Brown*, 776 F.2d 397, 403 (2d. Cir. 1985)("pieces of evidence must be viewed not in isolation but in conjunction").  When examining the jury and determining how a reasonable trier of fact would decide, it is important to note that the "jury's verdict may be based on circumstantial evidence." *D'Amato*, 39 F.3d at 1256 (quoting *United States v. Libera*, 989 F.2d 596, 601 (2d Cir. 1993).

Although the Defendant bears a heavy burden in challenging the sufficiency of the evidence by way of a *Rule 29* motion for judgment of

5

acquittal, the Government is not relieved of all responsibility in proving its case.  In presenting its case, the Government must introduce evidence sufficient to allow a jury to reasonably infer that the Government has proven each essential element of the crime charged beyond a reasonable doubt. *D'Amato*, 39 F.3d at 1256; *Jackson*, 443 U.S. at 319; *United States v. Macklin*, 671 F.2d 60, 65 (2d Cir. 1982).  A conviction cannot stand based solely "on speculation and surmise alone."  *United States v. Wiley*, 846 F.2d 150, 155 (2d. Cir. 1988).  As a result of the standard included under *Rule 29* and adopted by this circuit, the **Government is required to do more than merely "introduce evidence at least as consistent with innocence as with guilt."** (emphasis added)  *United States v. Mulheren*, 938 F.2d 364, 372 (2d. Cir. 1991).  In this case, the Government has failed to introduce evidence even approaching that which would be consistent with guilt and this motion for judgment of acquittal should be granted.

As this court explained in the jury instructions it issued in this case, in order to prove Defendant Turner guilty the Government must prove each of the three elements of the alleged crime beyond a reasonable doubt.  The court explained how the Government must prove:

> First, that the Defendant threatened to assault or murder Chief judge Frank Easterbrook, Judge Richard Posner, and Judge William Bauer;
> Second, that at the time of the alleged threat, Chief Judge Frank Easterbrook, Judge Richard Posner, and Judge William Bauer were United States judges; and
> Third, that the Defendant acted with the intent to impede, intimidate, or interfere with these judges while engaged in the performance of their official duties or with the intent to retaliate against these judges on account of the performance of their official duties.

Jury Instructions, pp. 6-7.  In this case, the court took Judicial notice that all three judges were United States judges at the time of the alleged threat, and Defendant Turner does not dispute that.  The Government, however, failed to offer sufficient evidence with regard to the first and third elements for a jury to find proof beyond a reasonable doubt.  For the purposes of this motion counsel for the Defendant would respectfully request that the Court review and incorporate our motion to dismiss and the analysis of the "objective" standard into this motion, and discussed further herein.

I. **The Government Failed To Prove That Defendant Turner's Statements and Blog Posts Were True Threats and Not Protected Speech**

As a portion of its jury instructions, this Court explained the protections that the *First Amendment* to the *Constitution* offers.  This court stated it thusly:

> The First Amendment protects vehement, scathing, and offensive criticism of public officials, including United States judges.  I instruct you, however, that a threat as I have defined the term in these instructions is not protected by the First Amendment to the United States Constitution.  Thus, if you find that the government has proven beyond a reasonable doubt that the statement about Chief Judge Frank Easterbrook, Judge Richard Posner, and Judge William Bauer was a threat as that term has been defined in these instructions, you may not acquit the Defendant based on your understanding of the constitutional protections of free speech.

Jury Instructions, p. 8.  The Government contends that the evidence it introduced at trial was not protected by the First Amendment, however, this is incorrect.  The evidence that the Government admitted during trial is all protected free speech and, therefore, should not be considered a threat by this Court.

In *Watts v. United States*, 394 U.S. 705 (1969), the defendant spoke out against then President Lyndon B. Johnson's continued use of the draft.  At a rally filled with people of similar viewpoints, some of whom may very well have been of the persuasion to take action, the defendant stated:

> They always holler at us to get an education.  And now I have already received my draft classification as 1-A and I have got to report for my physical this Monday coming.  I am not going.  If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.

394 U.S. at 706.  The Defendant's reason for making this comment was that the government was not going to make him "kill [his] black brothers."  *Id.*  The charging statute provides in relevant part:

> Whoever… knowingly and willfully otherwise makes any such threat against the President, President elect, Vice President or other officer next in the order of succession to the office of President, or Vice President-elect, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

*18 U.S.C. 871(a).*  The Defendant characterized this speech not as a true threat but rather as "a kind of very crude offensive method of stating a political opposition to the President."  394 U.S. at 707.  The court noted that it must interpret the threat portion of the statute taking in mind the intent of Congress in drafting the statute and keeping in mind a commitment to the "uninhibited, robust, and wideopen" public discussion of government and public officials.  *Id.* The court held that, taken in context and using the reaction of the crowd to which the statement was made, the statement was not a true threat under the statute.  *Id.* at 708.

Similarly, in the case at hand Defendant Turner posted his outrage at the actions of different members of the United States government for what he believed was the Government failing to uphold the Constitution.  While this is only Defendant Turner's opinion, it is one which he holds with conviction and chose to express vehemently.  For Defendant Turner to express "vehement, scathing, and offensive criticism of public officials, including United States judges" is not a crime.  Such expression is protected speech.  Jury Instructions, p. 8.  Additionally, language that is conditional upon other events is not necessarily a true threat.  Moreover, the language Mr. Turner used was nothing more than an opinion, where he opined that the judges "deserve to be killed."  Certainly we cannot argue that the language is not offensive, but is unquestionably not a threat and therefore protected.

The court in *Watts* stated very clearly that the language the defendant used in that case ("If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.") was "expressly made conditional upon an event – induction into the Armed Forces – which petitioner vowed would never occur…" 394 U.S. at 707.  Similarly, in the case at hand, Defendant Turner's call to action is made expressly conditioned on elected officials failing to realize that they are servants, not rulers of the people that elected them.  Statements such as these are not threats by any means and, therefore, cannot be construed as falling within the domain of *Section 115(a)(1)(B)*.  An example of the Government's evidence will demonstrate this.

9

During the course of Defendant Turner's trial, the Government introduced several pieces of evidence in the form of blog posts and emails from Turner's website and email address, turnerradionetwork.com.  The Government introduced this evidence because the Government believed that the evidence was sufficient to support a finding of guilt with regard to the first element of the charged crime:  that Defendant Turner threatened to assault or murder the three judges at issue.  For this purpose, the Government introduced Exhibit 1.

Through the testimony of Federal Bureau of Investigation Special Agent Wallschlaeger the Government introduced one of Defendant Turner's blog posts as Exhibit 1, titled:  Outrage:  Chicago Gun Ban Upheld.  (Trial Transcript, 12/02/09, AM 1 Trial, p. 91).  In this blog post, Defendant Turner reacted to the Seventh Circuit's decision in *National Rifle Association v. Chicago*.  During trial, the Government had Agent Wallschlaeger read certain portions of the admitted evidence aloud.  These portions, beginning on page six of Exhibit 1 include the following:

> All the years of peaceful legal challenges; all the years of peaceful appeals; all the years of peacefully and lawfully lobbying federal and state legislatures to achieve the penultimate goal of finally interpreting the meaning of the Second Amendment, only to have it all thrown in the trash by three appellate judges in a manner so sleazy and cunning as to deserve the ultimate response.
>
> This is what happens, folks, when you play by the rules. Government does not.
>
> ***
>
> Government lies, cheats, manipulates, twists, and outright disobeys the supreme law and founding documents of this land because they have not in our lifetime faced real free men willing to walk up to them and kill them for their defiance and disobedience.
>
> Thomas Jefferson, one of our founding fathers, told us the tree of liberty must be replenished from time to time with the blood of tyrants and patriots.  It is time to replenish the tree.

> Let me be the first to say this plainly:  These judges deserve to be killed.  Their blood will replenish the tree of liberty.  A small price to pay to assure freedom for millions.

(Jury Transcript, 12/02/09 AM 1 Trial, pp 92-93). While the language that Defendant Turner chose to use certainly was strong, it was not a threat to assault or murder the Judges Bauer, Easterbrook or Posner.  Indeed, this language was merely political hyperbole or rhetoric which Defendant Turner used to draw attention to issues he felt were important.

The evidence submitted during trial proved there was no indirect, veiled or conditional threat by defendant that he would personally commit any crime himself or that any crime would be caused to happen by the Defendant.  To the contrary, Government evidence proves Defendant was just blowing off steam using political hyperbole.  This is further supported by Agent Wallschlaeger when he testified that Defendant told him *"It is not my intention to ever have someone harmed or killed. I use crude political hyperbole to blow off steam over issues that aggravate me."*  and Defendant stated he "intended no harm to anyone." (Jury Transcript, 12/02/09 AM 1 Trial, pp 270)

Defendant Turner's speech in this case can only be viewed as protected speech under the *First Amendment* based on *Watts*, and certainly does not rise to the level of a true threat under *Martin*.  Defendant Turner's statements and blog posts, although inflammatory and designed to incite an emotional reaction, were vague and too unspecific to ever be considered a threat under *Section 115(a)(1)(B)*.  The trial of this matter proved that the Government's evidence was insufficient.

11

The Government's most potent piece of evidence is Exhibit 1, Defendant Turner's diatribe as described above.  At no point in that blog post does Defendant Turner plot the death of the judges or explicitly describe what Turner wants done to them.  Rather, Defendant Turner quoted Thomas Jefferson's "Tree of Liberty" letter and relates what Turner believes to be the current situation with Jefferson's situation at the time he created his writings. Defendant Turner never wrote anything that would rise to the level of a threat in the Supreme Court under *Watts* or in any of the Circuit Courts that cite to and support the decision in *Martin*.

When viewing the entire blog post, it is quite evident that the Defendant is nothing more than a political activist who uses vehement words.  He first breaks down and analyzes the Judges' relevant decision, clearly not the workings of a person who is attempting to cause physical harm.  Moreover, the Government's case was so weak  that they attempted to turn this matter into a solicitation case right from the start, attempting to confuse the jurors and convict Mr. Turner for a crime which he is not even accused of.  It is for these reasons that the Government failed to show that Defendant Turner's speech was not protected under the *First Amendment*, and therefore, a reasonable jury would not find proof beyond a reasonable doubt with regard to the charges facing Defendant Turner.

**II.     The Government Did Not Present Sufficient Evidence That Turner Threatened Judges For A Jury to Find Guilt Beyond a Reasonable Doubt**

In its instructions to the jury, this Court defined and explained what constitutes a threat for purposes of the relevant statutes.  Regarding the first element, this court instructed as follows:

> A statement is a threat if it was made under such circumstances that a reasonable person hearing or reading the statement and familiar with its context would understand it as a serious expression of an intent to inflict injury.  An absence of explicitly threatening language does not preclude you from finding the statement to be a threat.
> It is not necessary for the government to prove that the Defendant intended to carry out the threat, that the Defendant had the ability to carry out the threat, or that the Defendant communicated the threat to the victims.  The relevant intent is the intent to communicate the threat.
> In determining whether the charged statements constitute a threat, you should consider the context in which they were made.  Written words or phrases and their reasonable connotations take their character as threatening or harmless from the context in which they are used, measured by the common experience of the society in which they are published.

Jury Instructions, p. 7.  While precedent in this circuit supports these jury instructions, the Government's presentation of evidence in this case does not support proof beyond a reasonable doubt as to this element.

This circuit has not had the opportunity to define a threat for purposes of *18 U.S.C. § 115(a)(1)(B)*, however, this Court has defined a "threat" for purposes of other, similar statutes.  In *United States v. Malik*, 16 F.3d 45 (2d. Cir. 1994), this Court entertained an appeal from Defendant Malik, who had been convicted of two counts of mailing threatening communications, *18 U.S.C. § 876*,  and one count of threatening to assault a United States judge with intent to impede, intimidate or interfere with a judge in the execution of his official duties.  *18 U.S.C. § 115(a)(1)(B)*.  Defendant Malik appealed his

13

conviction with regard to *Section 876* because there was not sufficient evidence to sustain a conviction, "claiming principally that the letters did not contain threats within the meaning of the statute." *Malik*, 16 F.3d at 49.  This Court in *Malik*, employed nearly the same test for a threat under *Section 876* and this Court did in Defendant Turner's case:  "whether an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury."  *Id.* (internal citations omitted); *United States v. Maisonet*, 484 F.2d 1356, 1358 (4th Cir. 1973).  This Court's attempt at defining "threat" and its discussion of *Malik* are not singular events.

In the years following *Malik*, this Court has further opined as to what constitutes a threat for purposes of a *18 U.S.C. § 876* and *18 U.S.C. § 2332a(a)*. In *United States v. Davila*, 461 F.3d 298 (2d. Cir. 2006), Defendant Davila was convicted of threatening to use a weapon of mass destruction and delivering a threat to injure through the United States mail.  Defendant Davila's appeal with regard to *Section 876* revolved around statutory interpretation of the phrases "threatens... to use" and "threatens to injure," which afforded this Court yet another opportunity to define what constitutes a threat.  *Id.* at 301.

This Court began its analysis by demonstrating how each statute used "threat."  This Court explained as follows:

> At the time Davila sent his letter in 2002, *section 2332a* provided that anyone who:  without authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction ... (2) against any person within the United States, and the results of such use affect interstate commerce or, in the case of a threat, attempt, or conspiracy, would have affected interstate foreign commerce... shall be [guilty of a crime].  *18 U.S.C. § 2332a(a)*.

14

> *Section 876(c)* provided:  Whoever knowingly [deposits to be mailed or causes to be mailed] any communication... addressed to any other person and containing... any threat to injure the person of the addressee or of another, shall be [guilty of a crime].  *18 U.S.C. § 876(c).*

*Davila*, 461 F.3d at 301-02.  This court then went on to analyze "threat" by giving the word its ordinary, contemporary, common meaning.  *Id.* at 302.  This Court found that to threaten is "[t]o express a threat against," and further found that a threat is a "denunciation to a person of ill to befall him; esp. a declaration of hostile determination or of loss, pain, punishment, or damage to be inflicted in retribution for or conditionally upon some course; a menace."  *Id.* (quoting American Heritage Dictionary, Fourth Edition).  These definitions are consistent with the precedent set in this circuit regarding use of the word "threat."

In *Davila*, this Court noted that it had approved jury instructions in *Malik* that defined a threat as "a statement expressing an intention to inflict bodily harm."  *Malik,* 16 F.3d at 51.  This Court further held in *United States v. Kelner*, 534 F.2d 1020 (2d Cir. 1976), that a threat under *18 U.S.C. § 875(c)* was punishable "so long as the threat on its face and in the circumstances in which it is made is so *unequivocal, unconditional, immediate and specific* as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution."  534 F.2d at 1027 (emphasis added).  While this Court in *Davila* upheld Defendant Davila's convictions for threatening to use a weapon of mass destruction and for mailing threatening communications based on his mailing of baby powder in an envelope with a writing describing

the powder as anthrax to a state prosecutor's office, the situation in the instant case is much different.

In this case, the evidence adduced at trial clearly demonstrates that Defendant Turner's allegedly threatening conduct falls well below the threshold for what this Circuit, through precedent, has held to be threatening.  In addition to examining other statutes to aid in defining "threat" for purposes of the statute, we can look to other circuits for some insight.  In *United States v. Stevenson*, 126 F.3d 662 (5th Cir. 1997), the Fifth Circuit reviewed Defendant Stevenson's conviction under *18 U.S.C. § 115(a)(1)(B)* for threatening a United States Probation Officer while she was engaged in her official duties.  *Id*. at 663.

As of November 1994, Defendant Stevenson was under the supervision of a United States Probation Officer.  When Stevenson was taken into custody for an unrelated offense in January 1995, he was unable to contact his Probation Officer.  *Stevenson*, 126 F.3d at 663.  While in custody, Stevenson made several unsuccessful attempts to contact his probation officer, which frustrated him greatly.  In March 1995, the probation officer received the following letter from Defendant-Appellant Stevenson:

> Dear Rebecca,
>     This is Frederick.  Say why the fuck you won't do your job, bitch.  You need to get your ass over here to see me before I beat the shit out of you.  If you don't comply I will go through the motions of what I just wrote.

*Id.*  Not surprisingly, the probation officer was scared and the letter ultimately served to convict Defendant Stevenson.

When analyzing the language used by Defendant Stevenson and that used by Defendant Turner, the juxtaposition demonstrates why Stevenson's conviction was upheld and why Defendant Turner's motion for judgment of acquittal should be granted.  The language that Turner used was so vague and rhetorical in nature that no reasonable trier of fact could find the requisite threat present in order to convict.  Unlike Defendant Stevenson, Defendant Turner never wrote to the judges (whether by certified post, email, or blog) and said, "You need to obey the Constitution or I will kill you up.  If you don't comply I will go through the motions of what I have just wrote."  Indeed, nothing that Defendant Turner ever posted even came close.  The fact that nothing Turner did even approached that which would support a conviction under *Section 115(a)(1)(B)* was reflected by the jury and what one juror said upon being released by this Court: "The Government's case was weak."

In further support that Turner did not utter a threat is that fact that at the end of the Defendant Turner's trial, the jury was deadlocked and could not reach a unanimous verdict.  In the end, the jury was split nine to three in favor of acquittal.  In a December 7, 2009 article by the New York Daily News, titled "Mistrial in case of Internet Shock Jock Harold (Hal) Turner, Charged with Threatening to Kill Judges," Juror Richard Gardener revealed the breakdown of the deadlock.  Juror Gardener stated in reference to Defendant Turner, that "[h]e's a publicity seeker and he wants to be a bigger force than he was.  By acquitting him, he would have become bigger and stronger."  *Id.*, p. 1.  Juror Gardener's given reason is, of course, not based on the law and only furthers

the argument that ten of twelve jurors did not find that the Government had

proved each element beyond a reasonable doubt.

### III.    The Government Did Not Present Sufficient Evidence That Turner Had The Requisite Intent To Impede Or Intimidate The Judges At Issue

As this court did regarding what constitutes a threat, this Court also

thoroughly explained to the jury what constitutes threatening a judge for the

purpose of intimidating or impeding execution of a judge's official duties.  This

court explained as follows:

> As to the third element, the government must prove beyond a reasonable doubt that the Defendant acted with the intent to impede, intimidate, or interfere with the United States judges while engaged in the performance of their official duties, or with the intent to retaliate against the United States judges on account of the performance of their official duties.
>
> This intent may be established by circumstantial evidence, based upon the Defendant's outward manifestations, his words, his conduct, his acts and all of the surrounding circumstances disclosed by the evidence, and the rational or logical inferences that may be drawn from them.

Jury Instructions, pp. 7-8.  While this court instructed the jury in accordance

with this circuit's precedent, the Government failed yet again to prove beyond a

reasonable doubt that Defendant Turner acted with the intent to impede the

judges from the execution of their duties or in retaliation for such action.

In *Stevenson, supra.*, this Court held that there was sufficient evidence to

support his conviction based on Defendant Stevenson's intent.  In doing so, the

court cited to the Ninth Circuit stating that "the only intent requirement is that

the defendant intentionally or knowingly communicates the threat, not that he

intended or was able to carry out his threat."  *Stevenson*, 126 F.3d at 664

(quoting *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990).
The court in *Stevenson* further explained that "[t]he content, tone, and
language of the letter could certainly lead a reasonable jury to infer that a
threat was intentionally made, and the fact that it was deliberately written by
Stevenson and mailed to Gormley's courthouse office only serves to support the
jury's verdict." *Id.* at 665.  Although the Defendant's intent "can be proven by
direct or circumstantial evidence which allows for an inference of criminal
intent," the Government has provided neither direct nor circumstantial
evidence in this case.  *Id.*

In the instant case, the Government has shown little more than the fact
that Defendant Turner was frustrated with the judges of the United States
Court of Appeals for the Seventh Circuit.  Defendant Turner chose to use
inflammatory language to express his frustration, however, the content, tone
and language of his expression do not support the Government's conclusion
that Turner intended to retaliate against or impede federal officials within the
meaning of *Section 115(a)(1)(B).*  This is made clear by the jury finding nine to
three in favor of acquittal, with one of the three favoring guilt not using the
legal standard to decide and clearly basing his decision not on evidence, but
upon his dislike of Mr. Turner's "publicity" seeking ways

## CONCLUSION

As discussed above, Juror Gardener decided the case outside the scope
of the law that the court gave.  If the vast majority of a reasonable trier of fact
similar to the jury in this case found in favor of acquittal, it is difficult to argue

that some other, objective trier of fact would find in favor of conviction.  For these reasons, this Court should find that the Government did not sustain its burden at trial and grant Defendant's Rule 29 Motion for Judgment of Acquittal.

WHEREFORE, based upon the foregoing arguments and authorities this Honorable Court is respectfully urged to enter a judgment of acquittal to the Indictment.

Respectfully submitted on this 2nd  day of January, 2010

/S/ MICHAEL OROZCO____          /S/ NISHAY SANAN__
Michael Orozco                             Nishay K. Sanan, Esq.
Bailey & Orozco, LLC                    327. S. Plymouth Court
744 Broad Street                           Suite 201
Suite 1901                                     Chicago, IL 60604
Newark, NJ 07102                         312-692-0360
Phone: (973) 735 2683

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 650 |
| vs. | ) | Judge Donald E. Walter |
| | ) | Sitting by designation |
| HAROLD TURNER | ) | |

NOTICE OF FILING

***TO:***
***William Hogan & Bill Ridgway***
219 SOUTH DEARBORN
5TH FLOOR
CHICAGO, ILLINOIS 60604

***PLEASE TAKE NOTICE*** that on 1/2/09, WE CAUSED TO BE FILED WITH THE CLERK OF THE COURT, DEFENDANT'S Memorandum in Support of Rule 29.  A COPY OF WHICH IS SERVED UPON YOU.

/S/ MICHAEL OROZCO____          /S/ NISHAY SANAN__
Michael Orozco                    Nishay K. Sanan, Esq.
Bailey & Orozco, LLC            327. S. Plymouth Court
744 Broad Street                Suite 201
Suite 1901                      Chicago, IL 60604
Newark, NJ 07102                312-692-0360
Phone: (973) 735 2683

**CERTIFICATE OF SERVICE**

The undersigned, an attorneys, first being duly sworn on oath, states that a copy of Motion was served upon the parties named by electronically filing the same pursuant to the local rules of ECM on 1/2/09.

/S/ Michael Orozco_____/S/ Nishay Sanan