UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | No. 09 CR 650 |
| ) | Judge Donald E. Walter |
| vs. ) | Sitting by designation |
| ) | |
| HAROLD TURNER ) | |

**DEFENDANT'S CONSOLIDATED RESPONSE TO GOVERNMENT'S MOTION IN LIMINE AND RULE 404 MOTION IN LIMINE**

NOW COMES the Defendant, HAROLD TURNER, by and through counsel, NISHAY K. SANAN and MICHAEL OROZCO, and respectfully moves this Court to enter an Order conforming with the relief requested as follows:

**I.    RESPONSE TO GOVERNMENT'S MOTION REGARDING DEFENDANT'S STATEMENTS**

The Government points to document 22 as the proof that the Court has already ruled on this issue, but at trial, the very issue was brought forward by the Government's witness. **Exhibit A**, Pages 269-270 of Trial Transcript (Outside of the presence of the jury the Government had sought to bar the statement as inadmissible hearsay prior to Mr. Wallschlaeger's testimony, but was unsuccessful).This excerpt reveals that the witness himself proffered the statement of Defendant regarding his lack of intent to cause any harm to anyone during direct examination. There was no objection by defense counsel, thus this evidence was properly admitted.

The Government cannot now ask the court to rule that Defendant cannot offer evidence of his intent, or lack thereof, because it prejudices their case. By virtue of the charge, the Government must prove that defendant intended to cause harm, intended to threaten, or intended to impede. See *United States v. Stewart*, 420 F.3d 1007, 1017 (9th Cir. 2005)("By its express language, 18 U.S.C. §115(a)(1)(B) contains a specific intent element…Thus, a conviction under

that statute could only be had upon proof that the speaker intended the speech to impede, intimidate, interfere with, or retaliate against the protected official. Such proof would seem to subsume the subjective 'true threat' definition announced in *Black* and recognized in *Cassel*; one cannot have the intent required under section 115(a)(1)(B) without also intending to make a threat.").

If the court is to restrict Defendant's ability to elicit testimony or evidence during the trial which goes directly to his intent it is, in effect, almost requiring the Defendant to take the stand and testify. Clearly, this is what the Government is seeking to do with this motion based upon their failure to admit almost all of their evidence during the first trial.

## II. RESPONSE TO IN LIMINE MOTION REGARDING PUBLIC AUTHORITY

The Government seeks to preclude any reference to public authority as a defense during the course of this second trial based upon a lack of evidence. The Government claims that Defendant failed to prove a prima facie case which would allow submissions of his time as an FBI informant, and states that unless we plan on presenting Mr. Turner himself we cannot make any mention of his informant days. Such an argument fails, logically, to take into consideration the relevance of his conduct and the issue of intent which will always make his past as a confidential information and intelligence operative relevant.

Notwithstanding the Government's arguments, attached as **Exhibits B , C D, and E** are records which most assuredly provide a prima facie showing that Defendant Turner was instructed and actually paid by the United States Government for his fiery, legal and constitutionally protected rhetoric. Admitted during the course of the trial were some statements that Mr. Turner made about Judge Lefkow, most after her family members had been killed. He did admit during the course of questioning by Special Agent Wallschlaeger on the date of his

arrest that he could be criminally prosecuted for his statements, but it still does not negate his understanding of the law as he was firm in his belief and understanding, as given to him by the FBI, that his statement was legally protected free speech. His statements about the judge were a means of showing his bravado and to support his radio persona as a shock jock and, more importantly than anything else, to provide invaluable information to the federal government about the actions of real domestic terrorists.

The aforementioned exhibits demonstrate, especially due to the proximity in dates, that he was paid for making the statement about Judge Lefkow in order to find out about who may be responsible, and a subsequent review by the Associate Chief Division Counsel just a few days later revealed he was being operated within the Attorney General guidelines of a confidential informant. What else could Mr. Turner reasonably be expected to believe when he was paid by the federal government for making such statements? This goes beyond instruction; this is monetary gain to reinforce his reasonable belief that what he was saying and doing was legal. In fact, Mr. Turner went on national television on Fox News and made the exact same comments for which he is being prosecuted about Judges Lefkow, Easterbrook, Coffey, and Williams and was never prosecuted!

During the course of the trial the Government referenced his statements regarding Judge Lefkow as if Defendant incited and/or solicited the murders themselves. **Exhibit F**, Trial Transcript, Pages 209-210. Yet Defendant was actually instructed by the FBI to ratchet up the rhetoric on his website to help them find and identify the killer. Later it was revealed that the white supremacists movements had nothing to do with this, which was well documented in the media. It is quite amazing to think that the federal government, who is prosecuting someone over the skills that they taught him, is now trying to introduce evidence of prior statements from

a crime for which he had no part so as to prejudice him at his trial! Clearly, they would not have paid him for making those statements had he not actually assisted the FBI in their investigation.

Public authority may be used as an affirmative defense when the defendant reasonably relied upon the authority of a government official to engage in certain activity. *See United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 (11th Cir. 1994). In *Baptista* the eleventh circuit held that the validity of the defense depends upon whether the government agent in fact had the authority to empower the defendant to perform the acts in question. *Id.*. There can be little doubt of this when looking at the fact that he was paid to try to elicit the identity of the Lefkow family killer through his blog.It begets the questions: Why would the United States government pay Mr. Turner immediately after making the comments about Lefkow and praise his assistance? They did so because they told him exactly what to do and why it should be done. Not only was he frequently instructed about his fiery rhetoric, but he was informed that he could still be prosecuted, that his postings could be referred to the United States Attorney's Office, and that he should remind his audience that his rhetoric is not intended to incite violence. *See* **Exhibit G,** Federal Bureau of Investigation Report, 7/6/2007, Haug, Stephen M. Special Agent, Bates No.: 126-128. Yet he was never prosecuted, and often times cited *Brandenburg* at the end of his blog posts, thus unquestionably giving him the firm and undeniable belief that he was acting within the accepted and taught parameters of the law.

When analyzing the above cited documents, in conjunction with previously cited documents in other motions which show that Mr. Turner was aware that he was subject to prosecution but never actually arrested, it leads to the logical conclusion that he was informed as to what was legal and what was not. Making this matter even more perplexing is that he has made other controversial remarks about judges and none of them have ever been prosecuted.

*See* **Exhibit H**, Federal Buraeau of Investigation Report, 03/18/2005, Haug, Stephen M. Bates No.: 1106-1107.[1]

Furthermore, as stated in prior submissions to the court, Mr. Turner is unquestionably allowed to put on evidence of the extent of his cooperation with law enforcement. *See United States v. Neville,* 82 F.3d 750, 761 (11th Cir. 1996). It clearly goes to his state of mind and is discussed further below.

### III. RESPONSE TO GOVERNMENT'S MOTION TO ADMIT EVIDENCE

The entire argument submitted by the Government is schizophrenic and illogical. The Government has requested that the Defendant not be allowed to elicit testimony which is exculpatory in nature regarding his intent (Government's In Limine Motion Regarding Defendant's Statements), yet now readily admits that the charges make his intent an ultimate issue of fact which requires admission of prior statements pursuant to Rules 401, 402, 403, and 404. They cannot have it both ways; they cannot restrain the Defendant from offering or eliciting evidence about his intent while at the same time seeking to admit evidence of prior similar statements (which have never been prosecuted).

#### A. Intent to retaliate against public officials and emails threatening violence.

This motion is exactly the same as the last motion before trial seeking to admit evidence about prior similar acts, only now the Government argues that they are relevant to show his intent and are admissible under 401 and 402 as opposed to 404. They are wholly irrelevant, highly prejudicial, and do not warrant the court's time for consideration.

Defendant Turner's discussions and emails in the radio broadcasts and emails are merely an expression of his political beliefs that make use of protected free speech. The e-mails range in

---

[1] As stated in prior submissions, Mr. Turner's identity was often hidden, which is why he is referred to in the third person even though the report is about him.

age from months to years prior to the instant case and none of them mention the Judges. The radio clips go back to the year 2008 and even farther, to 2006, and none of them involve the Judges. We would also like to know which trial the Government was present for when the radio broadcasts referred to in their motion were admitted, because there is nothing in the record which indicates that any radio broadcasts were played for the court and admitted over defense counsel's objections. The Government contends that a reasonable reader would want to use these exhibits to determine if the alleged threats made against Judges Easterbrook, Posner, and Bauer in Defendant's June 2nd and 3rd posts were serious threats of injury or merely hyperbole by combining the radio broadcasts and emails.

To that end the Government relies, exclusively, on *United States v. Parr*, 545 F.3d 491 (7th Cir. 2008) and *United States v. Yousef*, 327 F.3d 56 (2nd Cir. 2003). None of these cases are on point, factually, and they do not support the argument for admission of the emails and radio broadcasts. The Government offers no new reason, other than a different Rule of Evidence, which would support the arguments which were made before and during the first trial.

### B. The Evidence Of Other Acts As Used By The Government Are Improper 404(b) Evidence And Should Be Excluded

The Government should be prohibited from introducing any bad act or propensity evidence regarding any of Defendant Turner's other emails or radio show transmissions according to *Federal Rule of Evidence 401 and 402*.

Defendant will rely upon previously submitted arguments regarding the admissibility of Turner's prior statements, which this court properly decided during the course of the first trial.

## CONCLUSION

For the foregoing reasons, Defendant Turner requests that the Government be prohibited from any mention of Defendant Turner's other acts in the form of blog posts or radio transmissions which are listed as Exhibits in the Government's Motion to Admit.

Respectfully submitted on this 20th day of February, 2010.

/S/ MICHAEL OROZCO
Michael Orozco
Bailey & Orozco, LLC
744 Broad Street
Suite 1901
Newark, NJ 07102
Phone: (973) 735 2683

/S/ NISHAY SANAN
Nishay K. Sanan, Esq.
327. S. Plymouth Court
Suite 201
Chicago, IL 60604
312-692-0360